CHANDLER, J.,
for the Court.
¶ 1. After her husband suffered a heart attack, Opal Williams Murphey moved from Tallahassee, Florida, to Quitman, Clarke County, Mississippi. Approximately four months later, she moved to Mobile, Alabama, to an assisted living facility.
¶ 2. While Opal was living in Mobile, her son, George Williams, filed a petition for a conservatorship in Clarke County. The conservatorship was established one week later, with George serving as the conservator.
¶ 3. Opal’s husband, Phil Murphey, challenged the subject matter jurisdiction of the Mississippi courts. An evidentiary hearing was held, where the chancellor *1236 found that the court had no jurisdiction and dismissed the conservatorship. George appeals, raising the following issues:
I. WHETHER THE CHANCELLOR CORRECTLY FOUND THAT OPAL WAS NOT A RESIDENT OF MISSISSIPPI
II. WHETHER THE CHANCELLOR PROPERLY DISMISSED THE CON-SERVATORSHIP AND REQUIRED THE CONSERVATOR TO FILE AN ACCOUNTING OF HIS ACTIONS
III. WHETHER THE CHANCELLOR ERRED IN DISMISSING THE CONSERVATORSHIP WITHOUT FIRST GIVING GEORGE, THE CONSERVATOR, NOTICE ON THE MATTER
¶ 4. Finding no error, we affirm.
FACTS
¶ 5. Philip (“Phil”) and Opal Murphey were married on March 21, 1981. Opal had five children from a previous marriage. Two of her daughters live in Mobile, Alabama. Her son, George Williams, lives in Clarke County, Mississippi. Phil has a son by his first marriage, Philip W. Murphey (“Philip”), an adult resident of Orange Beach, Florida.
¶ 6. At the time of her marriage to Phil, Opal was a legal resident of Mississippi. Shortly after the marriage, Opal and Phil built a house on Opal’s property in Quit-man, which is located in Clarke County, Mississippi. On June 21, 1983, Opal conveyed this property to Opal and Phil as joint tenants with rights of survivorship. On November 5, 1999, Opal and Phil conveyed the house and lot to the Murphey Family Foundation, Incorporated,[1] with Opal and Phil retaining a life estate.
¶ 7. Shortly after the marriage, Opal and Phil resided in Jennings, Louisiana. They then both established their domicile in Florida and lived in Tallahassee. Opal is currently registered to vote in Florida.
¶ 8. In April of 2001, Phil suffered a heart attack and was hospitalized for five days while he was visiting his son, Philip, in Jacksonville, Florida. Because Phil was no longer able to take care of Opal, Philip called George and requested that some family members come to Florida to care for Opal. Philip testified that he believed Opal was not competent to handle the stress.
¶ 9. In response to Philip’s phone call, Opal’s sister and daughter-in-law drove to Florida, and they discussed Opal’s needs with Philip. Everyone decided that Opal should move to Quitman, Mississippi. The testimony is contradictory as to whether the three of them agreed to move Opal to Quitman for an indefinite period of time. Philip testified that no definite time frame for Opal’s move was discussed, while Opal’s daughter-in-law and sister testified that everyone agreed that Opal should remain in Quitman indefinitely.
¶ 10. After it was decided that Opal should move to Mississippi, Opal’s sister and daughter-in-law drove to Opal’s Tallahassee home, packed Opal’s personal property, and stopped at a bank in Tallahassee, where they asked Opal to withdraw all of the money she held in her separate checking accounts. In Quitman, Opal stayed in the house that she and Phil built when they were first married, residing alone with the assistance of a housekeeper. Opal paid her bills by herself, went to *1237 church each Sunday, and maintained her house. Opal told Mary Ellen Dorman, a personal friend for more than forty years, that she had moved back to Mississippi permanently.
¶ 11. In September of 2001, the family observed that Opal was crying regularly without explanation, was depressed, and had memory loss. Opal agreed that an assisted living facility might be good for her, and George testified that she was willing to enter an assisted living facility provided that she could return to Quitman if she so desired. Opal selected Gordon Oaks, an assisted living facility in Mobile, Alabama, because two of her daughters were living there, and because there are no assisted living facilities in Quitman.[2] Opal became quite content at Gordon Oaks and wanted to remain; she never returned to Mississippi after she moved to Gordon Oaks.
¶ 12. In September of 2001, Phil had a heart catheterization procedure. Since that time, Phil’s health has improved significantly, and he has moved from Tallahassee to Jacksonville. On January 25, 2002, Phil sold the house in Tallahassee that he and Opal had lived in for most of the marriage. Opal did not sign the deed, which affirmed that the property was not homestead property. Opal received none of the proceeds from the sale.
¶ 13. On June 30, 2002, on behalf of his mother, George filed a separate maintenance suit against Phil. George alleged that Opal had been a resident of Mississippi for more than one year, had separated from Phil in April of 2001, and had suffered from dementia and Alzheimer’s Disease for several years. The complaint alleged that Opal was not competent to make her own decisions.
¶ 14. On October 21, 2002, George and one of Opal’s daughters filed an action for conservatorship in Clarke County, Mississippi. The complaint made no reference to Opal’s marriage to Phil, and no notice was given to Phil of the action. The complaint also made no mention that Opal was living in an assisted living facility in Alabama. The complaint alleged that Opal was a resident of Clarke County, Mississippi, had an interest in a home in Quitman, and was in need of an estate because of her age in conjunction with her physical and mental incapacity. The chancellor appointed two physicians to make the statutorily required examination of Opal. Miss.Code Ann. § 93-5-1 (Rev.2004). They both found Opal to be incompetent and unable to manage her affairs due to dementia. The conservator-ship was established on October 28, 2002, with George named as the conservator.[3]
¶ 15. On October 15, 2002, Phil filed a motion in the Alabama courts to establish a conservatorship over Opal. The Alabama motion was not heard until after the con-servatorship proceedings were completed in Mississippi. The Alabama courts later dismissed Phil’s motion because a conser-vatorship had already been established in Mississippi. Phil appealed the denial of his motion, which the Alabama courts upheld.
¶ 16. On December 4, 2002, Phil filed a motion to intervene in the Mississippi con-servatorship, alleging that the Mississippi courts had no jurisdiction to establish a conservatorship over Opal. The motion alleged that Phil had no intention of being *1238 separated from Opal and merely requested assistance from Opal’s family while he was recovering from his heart attack.
¶ 17. On December 9, 2003, Phil filed a motion in Clarke County styled “Husband/Intervenor’s motion for authorization for temporary co-habitation with his wife, Opal W. Murphey.” Opal was still living at Gordon Oaks at the time, and she expressed a desire to spend the Christmas holidays with her husband. Phil’s motion requested that Opal visit their marital home in Jacksonville during the holidays, and Opal would return to Mobile after the holidays were over. He also stated in an affidavit that he travels from Jacksonville to Mobile as frequently as possible to visit her. George’s response gave no objection to Phil’s resumed co-habitation with Opal, nor to their permanently re-establishing a marital home in Florida.
¶ 18. The chancellor removed George as conservator on December 16, 2003. Opal stayed in Florida after the Christmas holidays, where she and Phil currently reside in an assisted living facility. An evi-dentiary hearing was held on March 22, 2004, where the chancellor found that Opal was a resident of Florida and that the Mississippi courts did not have jurisdiction over Opal.
ANALYSIS
I. WHETHER THE CHANCELLOR CORRECTLY FOUND THAT OPAL WAS NOT A RESIDENT OF MISSISSIPPI
¶ 19. The issue of whether a chancery court has jurisdiction to hear a matter is a question of law, reviewable de novo. In re Guardianship of Z.J., 804 So.2d 1009, 1011(¶ 9) (Miss.2002). The statute that grants the chancellor the authority to appoint a conservatorship over a person allows the chancellor to establish such a conservatorship in the county in which the ward resides. Mississippi Code Annotated Section 93-13-251 (Rev.2004) provides:
If a person by reason of advanced age, physical incapacity or mental weakness is incapable of managing his own estate, the chancery court of the county wherein such person resides may, upon the petition of such person or of one or more of his friends or relatives, appoint a conservator to have charge and management of the property of such person, and if the court deems it advisable, also to have charge and custody of the person subject to the direction of the appointing court.
¶ 20. The defining characteristics of a resident are (1) presence and (2) intent to remain for some time. Johnson v. Preferred Risk Auto. Ins. Co., 659 So.2d 866, 872 (Miss.1995).
The word “resident” means one having more than physical presence. The transient visit of a person for a time to a place does not make him or her a resident while there. The word “resident” imports a fixed abode for the time being, as distinguished from a place of temporary abode or a temporary sojourn.
Id. (citation omitted). A person can have many residences simultaneously. Aetna Cas. and Sur. Co. v. Williams, 623 So.2d 1005, 1010 (Miss.1993). “It has been held that ‘the term “residence” imports merely having [an] abode at a particular place which may be one of any number of such places at which one is, at least from time to time, physically present.’ ” Id. (quoting In re Brown, 132 Misc.2d 811, 505 N.Y.S.2d 334 (N.Y.Sur.1986)).
¶ 21. Prior to April of 2001, Opal was indisputably a resident of Florida. George contends that the evidence is overwhelming that Opal is now a resident of Clarke County, Mississippi. As support for this claim, he reminds this Court that all of *1239 Opal’s property is located in Quitman. All of Opal’s bank accounts are joint accounts with rights of survivorship to George. Opal owns no assets in Florida jointly with Phil, because they entered an antenuptial agreement for the specific purpose of keeping their assets separate.
¶ 22. Until the year 2000, Phil and Opal filed joint tax returns as Florida residents. In May of 2001, Phil’s accountant advised Opal and Phil to file separate returns for the year 2000. The 2000 and 2001 tax returns listed Opal’s residence as Quit-man.[4] While this fact seemingly helps establish that Opal intended to reside in Mississippi, Opal’s 2000 and 2001 tax return represented that Opal’s address was Post Office Box 63, Quitman, Mississippi. That address is George’s office address; Opal has never received mail at this address.
¶ 23. In the present suit, George claims that Opal demonstrated enough mental competence to form the intent to change her residency to Mississippi in April of 2001. However, in other proceedings George has contended that Opal was mentally incompetent. On July 30, 2002, George filed a separate maintenance suit on his mother’s behalf in Clarke County, Mississippi and also sought to set aside the deed that conveyed Opal’s home in Quit-man to the Murphey Family Foundation. In that suit, George alleged that Phil had unlawfully driven Opal from Phil’s home and that she was entitled to separate maintenance until Phil takes her back into his home. The complaint further alleged that Opal had been suffering from Alzheimer’s disease for several years, and she did not have the mental capacity to understand the nature of her acts when she signed the deed in 1999. The chancellor noted in his opinion that “such a position in that suit is inconsistent with the position in the instant suit that between April, 2001 and September, 2001, the Ward was mentally capable of forming the intent to effect a change of domicile by choice.”
¶ 24. The evidence shows that Opal did not demonstrate the intent to reside in Mississippi. Opal was physically present in Quitman for a period of four months. According to Phil, no one had any long-term plans to keep Opal in Mississippi at the time she moved to Quitman; it was a wait-and-see situation. Phil testified that no one ever discussed the time frame of how long Opal should stay in Quitman. Phillip also denied that his father expressed any desire that Opal move to Quitman permanently. George’s wife, Brenda, and Opal’s sister, Fay Brownlee, contradicted the testimony of Phil and Philip. Both Brenda and Fay testified that the family decided to move Opal to Mississippi permanently. The chancellor resolved this conflict by noting Opal’s decision to change residency was one for Opal, not her relatives, to make. Both the move to Mississippi and the move to Alabama were decided not by Opal, but by Opal’s children. After Opal moved to Mobile, she never expressed a desire to move back to Quitman, and George made no plans to return Opal to Quitman. Opal currently resides in Florida, with no plans to return to Quitman. Common sense dictates that Opal, who was emotionally upset about her husband’s condition at the time she moved to Quitman, would not voluntarily decide to spend the rest of her life apart from her husband of twenty years.
¶ 25. George alleges that Phil intended to separate from his wife, as demonstrated by Phil’s lack of financial support while Opal was living in Mississippi and Alabama. However, the actions of Phil belie the notion that Phil intended to separate *1240 from his wife. He denied that he ever wanted Opal to separate from him and become a Mississippi resident. As soon as his health improved, he drove four hundred miles each way from Jacksonville to visit Opal in Mobile. He would make these trips each month and stay three or four days each time. In a letter dated May 1, 2002 to the Williams family, Phil offered to set aside funds to continue Opal’s care for as long as needed, provided that Phil received an accounting of her past savings, the current status of her savings, and how the funds were distributed. The letter stated that Phil made this offer the previous summer, but no one in the Williams family responded.
¶ 26. Based on our de novo review of the record, this Court finds that the chancellor was correct in its holding that Opal did not change her residency to Mississippi. Therefore, the Mississippi courts do not have the jurisdiction to establish a conservatorship over Opal’s person.
II. WHETHER THE CHANCELLOR PROPERLY DISMISSED THE CONSERVATORSHIP AND REQUIRED THE CONSERVATOR TO FILE AN ACCOUNTING OF HIS ACTIONS
¶27. When the chancellor found that the court did not have subject matter jurisdiction over the conservatorship, he dismissed the conservatorship, revoked the letters of conservatorship issued to George, and ordered George to make a final accounting. George’s fiduciary duties and the surety bond would remain in.abeyance until the Florida courts made a determination on Opal’s competency. George contends that the chancellor was powerless to order George to make a final accounting and to delay refunding the surety bond. A chancery court cannot proceed when it has no subject matter jurisdiction. Goodman v. Rhodes, 375 So.2d 991, 993 (Miss.1979).
¶ 28. In Petters v. Petters, 560 So.2d 722, 723 (Miss.1990), the Mississippi Supreme Court stated, “If the court is without jurisdiction-subject matter or personal-no one is bound by anything the court may say regarding the (de)merits of the case.” The chancellor in the case sub judice was not ruling on the merits of the conserva-torship but was merely giving instructions to dissolve the conservatorship.
¶ 29. George was issued letters of conservatorship on October 28, 2002. Even though the court did not have the jurisdiction for a conservatorship, a con-servatorship had been established, George had possession and control of Opal’s property and assets for more than one year, and George was required to file his final accounting and be held accountable for the actions he took as conservator. A final accounting is required when a guardianship ceases in any manner. Miss.Code Ann. § 93-13-77 (Rev.2004). The duty of a guardian to account and settle continues until he has done so, and is discharged by order of the proper court. Nunnery v. Day, 64 Miss. 457, 1 So. 636 (1887).
¶ 30. The chancellor ruled that the Mississippi courts do not have the authority to appoint a conservatorship over Opal’s person. However, because Opal owns property in Mississippi, it is permissible to establish a conservatorship over the property Opal possesses in Mississippi. Miss. Code Ann. § 93-13-181 (Rev.2004). Because there is a possibility that a guardian will be appointed , in the Mississippi courts for the limited purpose of managing Opal’s Mississippi property, it was appropriate for the chancellor to delay releasing George from his fiduciary duties and refunding the surety bond until the Florida courts adjudicate Opal’s competency.
*1241 III. WHETHER THE CHANCELLOR ERRED IN DISMISSING THE CONSERVATORSHIP WITHOUT FIRST GIVING GEORGE, THE CONSERVATOR, NOTICE ON THE MATTER
¶ 31. When the court learned that Opal was living outside the territorial jurisdiction of the court, it dismissed George as conservator. George argues that the chancellor erred when he dismissed George without first holding a hearing. When a fiduciary is either derelict or otherwise liable to be removed for any cause, the court is to order a citation to appear and show cause why he should not be removed. Jackson v. Jackson, 732 So.2d 916, 922(¶ 10) (Miss.1999); Miss.Code Ann. § 91-7-285 (Rev.2004).
¶ 32. George, however, raises this issue for the first time on appeal. An appellant is not allowed to raise an issue for the first time on appeal, because to do so prevents the lower court from having the authority to address the alleged error. Crowe v. Smith, 603 So.2d 301, 305 (Miss.1992) (citations omitted). This issue is not properly before this Court.
¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF CLARKE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, BARNES AND ISHEE, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.

. The Murphey Family Foundation is a trust that Phil set up for the purpose of charitable giving.

. Gordon Oaks is not a nursing home. It is an assisted living facility that helps senior citizens take care of themselves in their day-to-day activities. It also employs an activities director who provides entertainment. There are nursing homes in Quitman, but no assisted living facilities.

. The conservatorship was for Opal's property and for Opal’s person.

. The record is silent as to where Opal filed her income taxes after the year 2001.