936 So.2d 405 (2006)
Alan Keith ORY, Appellant
v.
Sharon Ann Young ORY, Appellee.
No. 2004-CA-00545-COA.
Court of Appeals of Mississippi.
May 2, 2006.
*407 Shawn M. Lowrey, Robert R. Marshall, West Point, attorneys for appellant.
Michael V. Ratliff, attorney for appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING
BARNES, J., for the Court.
¶ 1. The appellant's and appellee's motions for rehearing are denied. The original opinion issued in this case is withdrawn, and the following opinion is substituted therefor.
¶ 2. Alan Ory appeals the decision of the Lamar County Chancery Court regarding the validity of his divorce and the distribution of the marital assets. Rejecting Alan's claim of invalidity but finding error in the classification and calculation in value of certain marital assets, we affirm in part and reverse and remand in part.

*408 SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 3. Alan and Sharon Ory were married on November 4, 1995, in Lamar County, Mississippi, and lived together until on or about October 20, 2001. During their marriage, Alan was an employee and part-owner of SpeeDee Oil Change in Hattiesburg, and Sharon worked as a respiratory therapist at Forrest General Hospital, also in Hattiesburg. On October 24, 2001, Alan filed for divorce on the grounds of habitual cruel and inhuman treatment and adultery, or in the alternative, irreconcilable differences. Sharon answered and counterclaimed that she also was entitled to a divorce on the ground of habitual cruel and inhuman treatment, or in the alternative, irreconcilable differences. On January 24, 2003, the Chancery Court of Lamar County issued an order granting Alan the divorce on the ground of habitual cruel and inhuman treatment. The order granting the divorce ("judgment of divorce") stated that the chancery court reserved for a later date other issues such as the distribution of the marital assets. After hearings held in September and October 2003, the chancellor issued a final judgment which ordered the distribution of the marital assets ("distribution judgment"); this judgment was issued on January 23, 2004.[1]
¶ 4. In arriving at the distribution, the chancellor evaluated the following assets:
a. An eighty-acre parcel of land deeded to Sharon prior to the marriage;
b. The Orys' marital home and a five-acre section of the larger parcel, upon which the home was constructed;
c. The appreciation during the marriage of Alan's share of the SpeeDee Oil Change franchise;
d. Sharon's retirement fund of $36,520, accumulated during the marriage;
e. A motorcycle, tractor, pick-up truck, desk, and tools.
¶ 5. In the distribution judgment, the chancellor valued the marital assets at $280,077 and awarded each party fifty percent of the marital estate, or $140,038.50 apiece. Sharon was awarded the marital home, fee simple title to the entire eighty-acre parcel of land, the contents of her retirement account, and the furnishings in the home. Alan was awarded the appreciation in value of the SpeeDee Oil Change franchise as well as the motorcycle, tractor, truck, desk, and tools. Because the value of the assets distributed to Sharon slightly outweighed those awarded to Alan, the chancellor required that Sharon pay Alan a total of $13,034.50 to make up for the imbalance. Additionally, the chancellor ordered Sharon to reimburse Alan $49,000 for payments he made prior to the marriage to pay off a lien on Sharon's parcel of land. Taking into account the effect of the $49,000 payment, Sharon's award was effectively reduced to $91,038.50, and Alan's award increased to $189,038.50.
¶ 6. Dissatisfied with the chancellor's distribution, Alan filed a motion for new trial asserting that the chancellor's decision was against the overwhelming weight of the evidence. Upon the chancery court's denial of his motion, Alan, represented by new counsel, appealed to this Court, asserting the following: (1) that the chancellor erred in awarding the divorce *409 on the ground of habitual cruel and inhuman treatment; (2) that the chancellor erred in characterizing the seventy-five-acre parcel of land and certain funds as non-marital assets; (3) that the chancellor erroneously calculated the mathematics of the equitable distribution; and (4) that the chancellor erred in distributing the marital assets. We affirm in part and reverse and remand in part.

STANDARD OF REVIEW
¶ 7. This Court's scope of review in domestic relations matters is strictly limited. Dunn v. Dunn, 911 So.2d 591, 595 (¶ 8) (Miss.Ct.App.2005). We will not disturb a chancery court's findings unless the court's actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard. Andrews v. Williams, 723 So.2d 1175, 1177 (¶ 7) (Miss.Ct.App.1998). Particularly in the areas of divorce, alimony and child support, this Court is required to uphold the findings of fact made by a chancellor that are supported by substantial evidence and that do not indicate arbitrariness or caprice. Henley v. Jones, 880 So.2d 382, 384 (¶ 5) (Miss.Ct.App.2004) (citing Newsom v. Newsom, 557 So.2d 511, 514 (Miss. 1990)).

ISSUES AND ANALYSIS

I. WHETHER THE CHANCERY COURT ERRED IN AWARDING ALAN THE DIVORCE ON THE GROUND OF HABITUAL CRUEL AND INHUMAN TREATMENT.
¶ 8. Dissatisfied with his share of the marital assets, Alan now challenges not only the chancellor's distribution of the assets, but the validity of the divorce itself. The challenge seems to stem from Alan's belief that his financial position would be improved were he awarded a divorce on the ground of adultery, as the chancellor might find that Sharon's conduct weighs against her receiving a favorable share of the marital assets. Alan now assumes the extraordinary position of asking this Court to find that the divorce he procured is invalid. The matter is complicated by Sharon's remarriage sometime after the issuance of the judgment of divorce.
¶ 9. It is well-established that a party is not allowed to raise an issue for the first time on appeal, because to do so prevents the lower court from addressing the alleged error. See In re Conservatorship of Murphey, 910 So.2d 1234, 1241 (¶ 32) (Miss.Ct.App.2005) (citing Crowe v. Smith, 603 So.2d 301, 305 (Miss. 1992)). Alan stated in a sworn complaint that he suffered habitual cruel and inhuman treatment at the hands of his wife; however, represented by new counsel on appeal, Alan now begs this Court to invalidate his divorce because he failed to put forth sufficient evidence to justify the grant of his divorce. Stunned by Alan's about-face, Sharon contends that equitable or judicial estoppel should prevent Alan from obtaining the relief he seeks.[2] While estoppel may well prevent Alan from gaming our courts in such a manner, we decline to answer the question, for the issue of the validity, vel non, of the Orys' divorce is not properly before this Court. An examination of the record shows that Alan failed to raise this issue either by *410 objection or via a post-trial motion. Therefore, Alan waived the issue and we may not pass judgment on his challenge as to the validity of the divorce. See Burcham v. Burcham, 869 So.2d 1058, 1060-61 (¶¶ 7-9) (Miss.Ct.App.2004); Seals v. State, 767 So.2d 261, 263 (¶ 6) (Miss.Ct.App.2000).
¶ 10. The dissent would hold the Orys' divorce invalid because the divorce proceedings were not held in open court, and were thus in violation of section 93-5-17 of the Mississippi Code.[3] However, again, Alan never raised this argument either below or on appeal. Alan's briefs make no mention of the statute cited by the dissent; he merely claims that the issue below was one of proof  that he did not put forth sufficient evidence to support the chancellor's finding of habitual cruel and inhuman treatment. He in no way asserts that a section 93-5-17 defect voids the divorce. It is true that the record in this matter is incomplete, and that the docket makes no reference to a hearing on the merits of Alan's case for divorce. However, the chancellor's judgment of divorce reflects that he "heard and considered both oral and documentary evidence." Because Alan failed to raise below that the divorce should be held void for failure to conduct the proceedings in open court, we now have no record to aid us in evaluating any such claim, and Sharon has had no opportunity to respond to the argument. The chancellor would clearly be in a much better position to resolve the issue. He should have been given the opportunity to do so.
¶ 11. Even if the dissent is correct in its assertion that the chancery court failed to comply with the requirements of section 93-5-17, this Court does not have jurisdiction to declare the judgment of divorce void on that basis. Our Court is a court of appeals; it has no original jurisdiction. We "can only try questions that have been tried and passed upon by the court from which the appeal is taken." Leverett v. State, 197 So.2d 889, 890 (Miss.1967). Alan could have filed a motion with the chancery court pursuant to Rule 60(b)(4) of the Mississippi Rules of Civil Procedure, asking the court to set aside the judgment of divorce as void.[4] However, he filed no such motion. Had he made such a request and been denied, then we would have jurisdiction to rule on the question. However, because Alan did not seek that relief below, we may not grant it on appeal.

II. WHETHER THE CHANCERY COURT ERRED IN CHARACTERIZING THE SEVENTY-FIVE-ACRE PARCEL OF LAND AND CERTAIN FUNDS AS NON-MARITAL ASSETS.
¶ 12. In the distribution judgment, the chancellor found that while the marital home and five-acre parcel of land upon which the home was situated were marital assets, the remaining seventy-five-acre parcel was not a marital asset subject to equitable distribution. Alan challenges this finding, and claims that the land became a marital asset because of his efforts to improve the land and because of his contribution of funds in removing a lien from the property. Furthermore, Alan contests the chancellor's finding that $35,000 that Sharon put into the home was not a marital asset.
*411 ¶ 13. "For purposes of divorce proceedings, the marital estate consists of property acquired or accumulated by the parties during the course of the marriage." Hankins v. Hankins, 866 So.2d 508, 511 (¶ 13) (Miss.Ct.App.2004) (citing Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss. 1994)). The marital estate is subject to equitable distribution upon the divorce of the parties. Id. However, not all property acquired during the course of a marriage is "marital"; those assets attributable to a party's separate estate prior to marriage are considered non-marital property not subject to equitable distribution. Id. While this is the general rule, non-marital assets may lose their status as such if the party commingles the asset with marital property or uses them for familial benefit. Johnson v. Johnson, 650 So.2d 1281, 1286 (Miss.1994).
¶ 14. In the present case, there is no serious dispute that Sharon owned the property prior to her marriage to Alan. Though Alan argued at trial and again in his briefs that he "bought" the land from Sharon's parents, the record does not support his contentions. The record shows that the land in question, in Sharon's family for over 100 years, was encumbered by a mortgage of $49,000. Before the marriage, Alan paid off this lien with his personal funds, but title in the property remained solely in Sharon's name. While Alan's contribution removed a cloud from the property, the record is absent of any evidence showing that Alan purchased the land. Sharon testified that prior to Alan's offer to remove the lien, she had secured a loan to refinance the property. Therefore, Alan's argument that Sharon would have "lost" the property without him, and that therefore he "bought" the property, is not supported by the record. The chancellor's distribution judgment, however, recognized the value of Alan's contribution, and reimbursed him the $49,000.
¶ 15. Because there is no question that the seventy-five-acre parcel belonged to Sharon's separate estate prior to the marriage, if Alan is to have any interest in the property, it can only come about through the commingling doctrine. See Hankins, 866 So.2d at 511 (¶ 16). Alan contends that the parcel was converted to a marital asset due to his efforts to improve the land. The record shows that Alan made some efforts to improve the land; the testimony is unclear as to what extent his efforts improved the seventy-five-acre tract versus the five-acre parcel upon which the marital home was built. Nevertheless, the record reflects that Alan cleared a portion of the land, hauled dirt onto the property, and had a large number of seedlings planted on the property. Alan did not, however, put forth sufficient evidence to prove that his activity was so pervasive as to convert the entire seventy-five-acre parcel into a marital asset, or show how the land increased in value during his marriage to Sharon. Thus, we cannot find that the chancellor was manifestly wrong in characterizing the parcel as a non-marital asset.
¶ 16. Alan also asserts that the chancery court erred in characterizing certain funds as non-marital assets. At the distribution hearing, Sharon testified that at the beginning of her marriage to Alan, she owned a 1991 Cavalier mobile home. She testified that Alan paid $30,000 to pay off a lien on the home, and that when the home was subsequently sold for $19,000, the proceeds were put back into the house the couple was constructing. Additionally, Sharon testified that during the marriage she received $16,000 in personal injury proceeds as a result of an automobile accident. Sharon stated at the distribution hearing that these funds "went back into *412 knobs and door handles and window blinds and the wallpaper and furniture and appliances for the house." In the distribution judgment, the chancellor assigned to the marital home and five-acre tract a total value of $180,000, which represented the value suggested in an appraisal report on the property. The chancellor subtracted from this figure $28,443, representing the balance of the mortgage on the property. From the resulting figure of $151,557, the chancellor subtracted $35,000 that Sharon had contributed to the purchase of the home. This $35,000 figure represented the total of the proceeds from the personal injury settlement and the sale of the mobile home.
¶ 17. It is clear from the record that the entire $19,000 in proceeds from the sale of the mobile home should not have been characterized as a non-marital asset. Sharon testified that prior to the marriage, she had paid a down payment of $4,500 on the home and had made monthly payments of $418.84 for "six or seven years." However, it is undisputed that Alan paid approximately $30,000 to clear the lien from the home, and that the mobile home later sold for $19,000. We reverse the chancellor's characterization of the entire $19,000 as a non-marital asset, and remand for a recalculation of the award that takes into account the contributions of both parties.
¶ 18. Alan also challenges the chancellor's characterization of Sharon's $16,000 personal injury award as a non-marital asset. While proceeds from personal injury actions are not generally deemed marital assets,[5] they can lose their non-marital status through commingling with marital assets. Myrick v. Myrick, 739 So.2d 432, 434 (¶ 7) (Miss.Ct.App.1999). The record shows that Sharon invested the entire $16,000 in furnishings for the marital home; this is a clear example of commingling. Exacerbating the error is the fact that Sharon was awarded the marital home and its furnishings. The $16,000 injury award was used to furnish the home; thus, the chancellor's award gave Sharon double credit for her contribution. Finding error, we reverse the chancellor's characterization of the personal injury proceeds as non-marital assets.
¶ 19. In sum, we uphold the chancellor's finding that the seventy-five-acre parcel of land was a non-marital asset. However, because we find error in the chancellor's calculation of the portion of the proceeds from the sale of the mobile home to which Sharon is entitled, and in the chancellor's determination that Sharon's $16,000 personal injury settlement was a non-marital asset, we remand to the chancery court for a distribution of these assets in a manner consistent with this opinion.

III. WHETHER THE CHANCERY COURT ERRED IN THE MATHEMATICS OF THE PROPERTY DIVISION.
¶ 20. Alan testified at the distribution hearing that when he sold his share of the SpeeDee Oil Change franchise for $500,000, he "paid out" $296,000 in expenses related to the sale. Included in the $296,000 figure were payments to business partners, a payment to the franchise's parent company, capital gains taxes, and a payment to pay off a business loan. The chancellor's distribution judgment mistakenly *413 quoted a figure of $296,000[6] as the amount Alan netted in the sale, rather than the amount he paid out pursuant to the sale. The chancellor used the $296,000 figure in calculating the appreciation in value of the SpeeDee Oil Change franchise during the Orys' marriage. The miscalculation was significant; using the $296,000 figure, the chancellor arrived at an appreciation value of $127,000. Had the chancellor used $204,000 as the net profit (resulting from sale price of $500,000 minus expenses of $296,000), he would have arrived at an appreciation of only $35,000.
¶ 21. Though the chancellor clearly erred in his calculation, this does not end the inquiry. Alan testified that he "ha[d] $250,000 left" after the sale of the franchise. It is mathematically impossible that Alan could be left with this sum after paying $296,000 in expenses related to the sale. In order for Alan to have $250,000 after the sale, the sale price must have been over $500,000, or the value of the business at the time of sale must have been the sale price plus the value of certain bank accounts Alan retained after the sale. Annette Turner, Sharon's expert witness, testified that both the sale price and the amount remaining in the bank accounts at the time of the sale had to be considered. She concluded that Alan actually received $314,932 for his interest when the SpeeDee Oil Change franchise was sold. Thus, it appears that the value Alan retained after the sale of the business was between $250,000 and $314,392.
¶ 22. We remand this issue to the chancery court so that it might revisit the issue of the valuation of the SpeeDee Oil Change franchise, and the corresponding appreciation in value of the franchise during the Orys' marriage.

IV. WHETHER THE CHANCELLOR ERRED IN DISTRIBUTING THE MARITAL ASSETS.
¶ 23. Though we have found that the chancellor erred in calculating the value of certain assets, we do not find that the chancellor erred in attempting to distribute the marital assets equally. The chancellor took into consideration the equitable distribution principles embodied in Ferguson v. Ferguson, 639 So.2d 921, 927 (Miss.1994), and did not commit manifest error. However, Alan claims that the chancellor erred in distributing the marital assets because he did not take into account Sharon's adultery. We note that in the distribution judgment, the chancellor made no mention of the relative fault of the parties. Marital misconduct is a factor entitled to be given weight by the chancellor when the misconduct places a burden on the stability and harmony of the marital and family relationship. Singley v. Singley, 846 So.2d 1004, 1007 (¶ 8) (Miss.2002) (citing Ferguson, 639 So.2d at 927). While Sharon did admit that she had engaged in adulterous activity, Alan put forth no evidence to show that Sharon's conduct affected the stability of the marriage. Had Alan put forth some evidence of how Sharon's conduct affected the marriage, it is possible that the chancellor might have erred in ignoring that proof. However, because Alan did not put forth such evidence, we cannot find the lower court in error. This issue is without merit.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF LAMAR COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE TO BE EQUALLY DIVIDED BETWEEN THE APPELLANT AND THE APPELLEE.
*414 KING, C.J., MYERS, P.J., CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR. LEE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, J. SOUTHWICK AND ROBERTS, JJ., NOT PARTICIPATING.
LEE, P.J., Dissenting:
¶ 25. I joined the dissent in this case which was authored by Judge Bridges. As Judge Bridges has retired from this Court, I adopt his dissent as set forth below.
¶ 26. I disagree with the majority's decision to affirm the chancery court's decision. I agree that the majority's reasoning bears consideration, but I would apply greater weight to other factors. Accordingly, I respectfully and humbly dissent.
¶ 27. I concede that Alan did not raise the issue of the validity of his divorce when he was before the chancellor. As the majority notes, a party is not allowed to raise an issue for the first time on appeal. See In re Conservatorship of Murphey, 910 So.2d 1234(¶ 32) (Miss.Ct.App.2005) (citing Crowe v. Smith, 603 So.2d 301, 305 (Miss. 1992)). We have the authority to prevent a manifest miscarriage of justice, even when a party waives its right to assert error. State Highway Comm'n of Mississippi v. McDonald's Corp., 509 So.2d 856, 863 (Miss.1987) (citing Johnson v. State, 452 So.2d 850, 853 (Miss.1984)). Though no Mississippi case sets a precedent that errors such as those in the present case rise to the level of plain error, I would apply the doctrine under these circumstances.
¶ 28 "[G]rounds of divorce are purely creatures of statute." Bland v. Bland, 620 So.2d 543, 545 (Miss.1993). Accordingly, "the requisites of those grounds must be supported by facts and evidence presented at trial." Id. Section 93-5-17 of the Mississippi Code requires that testimony to prove habitual cruel and inhuman treatment must occur in open court or the divorce is void. Miss.Code Ann. § 93-5-17 (Rev.2004). Here, the testimony did not occur in open court. The statute says the divorce is void, not "voidable." To allow a void divorce to proceed would amount to a miscarriage of justice.
¶ 29. "Even where a divorce on grounds of [habitual] cruel and inhuman treatment is uncontested, there must be corroboration of the plaintiff's testimony." Peterson v. Peterson, 648 So.2d 54, 57 (Miss.1994) (citing Unif. Chan. Ct. R. 8.03). If no evidence was presented, there was no opportunity for corroboration. Id. In Samples v. Davis, 904 So.2d 1061(¶ 15) (Miss.2004), the supreme court vacated a chancellor's decision to enter a consent judgment. The judgment was based on a consent agreement, but that consent agreement failed to meet certain procedural requirements because the terms were not read in open court and did not appear in the record. Id. at (¶ 14). Based on the lack of those requirements, the supreme court found a lack of substantial, credible evidence and decided to "in effect `wipe the slate clean and put the parties back where they were prior to trial.'" Id. (quoting Massingill v. Massingill, 594 So.2d 1173, 1177 (Miss.1992)).
¶ 30 I concede that the majority has reason for concern. Alan's tactics are disheartening. He obtained what appears to be a divorce judgment on the grounds he requested and now he attempts to return what he previously sought. It is not out of concern for Alan that I dissent. I dissent because certain procedural and statutory requirements transcend Alan's questionable tactics. Further, I am not concerned that Alan will be unjustly enriched. If his goal is to take another bite at the apple in hope of a more favorable property distribution, there is no reason to believe such *415 will be the result. However, I dissent based on the requirements necessary for a valid judgment of divorce, regardless of Alan's well-being.
IRVING, J., JOINS THIS SEPARATE WRITTEN OPINION.
NOTES
[1] The chancery court's first judgment was interlocutory in nature, and thus not subject to appeal, because the court reserved the issue of equitable distribution for a later date. See Cameron v. Burns, 802 So.2d 1069, 1071 (¶ 14) (Miss.Ct.App.2001); M.R.C.P. 54(b). Accordingly, the second, final judgment is the subject of the present appeal.
[2] Alan attempts to dampen the force of Sharon's estoppel argument by claiming that she was taking a risk by remarrying, since she knew that the divorce was being appealed. However, it does not appear from the record that the issue of the divorce's invalidity was ever raised until Alan filed his appellate brief with this Court on December 30, 2004. There is nothing in the record to reflect that Alan ever contested the validity of his divorce before the chancery court, and neither party has referenced any prior claim of invalidity.
[3] The statute reads, in pertinent part: "The proceedings to obtain a divorce shall not be heard or considered nor a judgment of divorce entered except in open court. . . . Any judgment made or entered contrary to the provisions of this section shall be null and void." Miss.Code Ann. § 93-5-17(1) (Rev. 2004).
[4] We note that on remand, Alan is free to file such a motion in the chancery court.
[5] In Tramel v. Tramel, 740 So.2d 286, 290-91 (¶ 17) (Miss.1999), the Mississippi Supreme Court adopted the "analytic approach" in analyzing what portions of personal injury awards are to be considered non-marital property. The record contains no evidence that would lead us to hold that any part of the $16,000 should have been deemed non-marital.
[6] Though the judgment actually states that the proceeds of the sale were $290,000, the mathematics of the judgment make it clear that the chancellor meant $296,000.