MAXWELL, J.,
for the Court:
¶ 1. This appeal challenges the notice provided to Henry Curtis of the post-di *626 vorce hearing to divide the equity in the real property Henry owned with his ex-wife, Wanda Curtis. In July 2008, the chancery clerk mailed notice of the October 2008 hearing directly to Henry at the marital residence, where he was still living.
¶ 2. Because Henry and Wanda agreed in their property settlement to divide the property at a later hearing, this issue was an unresolved matter at the time of the divorce. Only service under Mississippi Civil Procedure Rule 5 was required. And because Henry was no longer represented by an attorney due to his attorney’s indefinite suspension from the practice of law, Rule 5 instructed that Henry, not his former attorney, be served. Finding Henry was properly served notice of the property-division hearing, we affirm the chancellor’s property-division award.
¶ 3. At the property-division hearing, the chancellor also heard testimony that Henry had failed to pay his portion of his son’s orthodontist bill. Accordingly, the chancellor awarded Wanda a $1,474 judgment against Henry. Because the property settlement had addressed how the spouses would pay for their child’s doctor bills, this was not an unresolved matter in the divorce. Instead it was-an issue of contempt for failure to comply with the property settlement. Contempt matters require a summons under Rule 81. Finding Henry was not properly summoned under Rule 81, we vacate the award of $1,474.
FACTS AND PROCEDURAL HISTORY
¶ 4. After twelve years of marriage and one child together, Henry and Wanda separated in March 2002. Henry remained at the marital residence, while Wanda and their son moved to rented property. They consented to a judgment of divorce in April 2006, incorporating into the judgment a written property-settlement agreement. The property-settlement agreement disposed of all issues of child custody, child support, and ownership of personal property. But two pieces of real property, including the marital residence, had yet to be appraised. Through the settlement agreement, the parties authorized the chancellor to conduct a hearing, post-appraisal, to divide the equity in the real property. At this later hearing, the chancellor would consider any claims or credits , each spouse might have against the other’s half of the equity, including Wanda’s housing expenses since separation!
¶ 5. In October 2006, Wanda filed for contempt against Henry because he refused to allow an appraisal of the real property. An appraisal was eventually obtained, and the hearing to divide the property was finally set for October 1, 2008. In the interim, in January 2008, the Mississippi Supreme Court indefinitely suspended Henry’s attorney, Walter ‘Wes” Teel, from practicing law. So in July 2008 the chancery clerk mailed the notice of the October 1 hearing directly to Henry at the marital residence, where Henry was still living.
¶ 6. Henry did not appear at the hearing. Wanda testified about the value of the properties and her claims against Henry’s equity. The marital residence appraised for $65,000. The other property appraised for $44,000. Neither property had a lien, resulting in $109,000 in total equity or $54,500 in equity for each spouse. But Wanda had made the $20,000 down-payment on the marital residence using her separate property, a personal-injury settlement. She also paid $30,950 in rent during the four years she and Henry were separated but not yet divorced, while Henry lived in the marital residence for free. Wanda also testified Henry had not paid *627 his half ($1,474) of their son’s orthodontist’s bill.
¶ 7. The chancellor credited Wanda the down-payment and rent — $50,950 total— against Henry’s half of the equity and awarded Wanda both pieces of property. He compensated Henry for his remaining $3,550 in equity by awarding him the mobile home on one of the pieces of property. He also separately awarded Wanda the $1,474 Henry allegedly owed on the unpaid orthodontist bill.
¶ 8. A copy of the resulting November 5, 2008 judgment was mailed to Henry, who filed a petition to reconsider within ten days of entry of the judgment. The chancellor set Henry’s motion to reconsider for hearing on October 30, 2009. During the hearing, Henry testified he was working as a truck driver and was. on the road in early July 2008, when the notice was mailed. He also claimed he had experienced problems receiving his mail at this home.
¶ 9. The chancellor denied Henry’s petition, finding the mailed notice of hearing was sufficient to apprise Henry of the October 1 hearing and that service of the notice was complete upon mailing. The chancellor also found that, through the written property-settlement agreement, the parties had agreed to a future hearing to divide the real property, and Henry should have anticipated a hearing would be set at some point in the future. He further reasoned the mere passage of time since the divorce did not require more than mailed notice.
¶ 10. Henry timely appealed.
DISCUSSION
¶ 11. We find Henry waived his first argument that the 2006 divorce was invalid based on a lack of consent to adjudicate because he failed to present this issue at the trial level. We must, however, consider Henry’s second argument — that he was not properly notified of the October 1, 2008 hearing and, consequently, the chancellor abused his discretion by denying his petition for reconsideration, as it applied to the chancellor’s property division and award of medical expenses.
I. Consent to Adjudicate
¶ 12. On appeal, Henry argues the 2006 divorce decree was invalid because there was no consent to adjudicate, as required -by Mississippi Code Annotated section 93-5-2(3) (Supp.2010).
¶ 13. While we note the record contains a written consent by both parties to a judgment of divorce, incorporating a property-settlement agreement, we find Henry waived the issue of the sufficiency of this consent by not first presenting this issue at the trial level. Ory v. Ory, 936 So.2d 405, 409-10 (¶¶ 9, 11) (Miss.Ct.App.2006) (finding husband waived, challenge to divorce at appeal level after failing to raise issue of divorce’s validity, befpre the chancellor).
¶ 14. In his petition to reconsider, , Henry could have argued the 2006 judgment of divorce.was invalid based on a lack of statutorily required consent.[1] In- *628 stead, he took the position the 2009 final judgment violated the terms of the 2006 judgment of divorce and asked the court to enforce the terms of the property-settlement agreement. The only argument Henry presented during the hearing on his petition to reconsider was that he lacked notice of the October 1 hearing. He did not contest the chancellor’s authority to distribute the real property based on the failure to comply with section 93-5-2(3).
¶ 15. We will not entertain Henry’s argument that the judgment of divorce is invalid simply because Henry is displeased with the property division. See Ory, 936 So.2d at 409 (¶¶8-9). Had Henry requested the chancellor set aside the divorce decree based on a lack of consent and had the chancellor refused, our inquiry would include whether the judgment of divorce conformed with section 93-5-2(3)’s requirements. Id. at 410 (¶ 11). But because the issue of the divorce decree’s validity was not raised before the chancellor, we find this issue is outside of our appellate review. Id. at 409^410 (¶¶ 9,11).
¶ 16. We do point out that it was error, albeit harmless error, for the chancellor to divorce Henry and Wanda without first dividing the equity in the real property. See Rounsaville v. Rounsaville, 122. So.2d 909, 911 (¶¶ 8-9) (Miss.1999) (finding harmless error to grant divorce before adjudicating all matters involving property rights between the parties). Mississippi Code Annotated section 93-5-2 provides:
No divorce shall be granted pursuant to this subsection until all matters involving custody and maintenance of any child of that marriage and property rights between the parties raised by the pleadings have been either adjudicated by the court or agreed upon by the parties and found to be adequate and sufficient by the court and included in the judgment of divorce.
Miss.Code Ann. § 93-5-2(3). Although Henry and Wanda agreed to divide the equity in the real property, they left to the chancellor to adjudicate how much equity each spouse would receive, depending on contingent claims and credits. Based on the statutory language, unsettled property-rights issues should be adjudicated, not just pending adjudication, before a divorce is granted. But as in Rounsaville, we find this error to be procedural and harmless. Rounsaville, 732 So.2d at 911 (¶ 9) (citing Johnston v. Johnston, 722 So.2d 453 (Miss. 1998)). Henry has shown no prejudice from being divorced two-and-a-half years prior to the division of the real property. In fact, Henry benefitted from the delay by being allowed to remain in the marital residence, while Wanda had to pay over $30,000 in rent for which she did not receive credit. And the chancellor refused to credit Wanda any rent payments made after April 2006, the time of divorce.
II. Notice of Hearing
¶ 17. Henry next contends that the chancellor should have granted Henry’s petition for reconsideration and conducted a new hearing because he was not properly notified of the October 1 hearing.
¶ 18. “How a court treats a motion for reconsideration turns on the time at which the motion is served. If the motion is served within ten days of the rendition of judgment, the motion falls under. Rule 59(e) [of the Mississippi Rules of Civil Procedure].” Carlisle v. Allen, 40 So.3d 1252, 1260 (¶ 33) (Miss.2010) (quoting Cannon v. Cannon, 571 So.2d 976, 978 (Miss. *629 1990)). Because Henry filed his petition ■within ten days of the entry of the judgment, we consider his petition for reconsideration as a motion for new hearing under Rule 59. M.R.C.P. 59.
¶ 19. “An appeal from a denial of a Rule 59 motion may address the merits of the entire underlying proceeding, and review of a trial judge’s denial of a Rule 59 motion is limited to abuse of discretion.” Perkins v. Perkins, 787 So.2d 1256, 1261 (¶ 9) (Miss.2001).
¶20. To succeed on a Rule 59(e) motion, “the movant must show: (i) .an intervening change in controlling law, (ii) availability of new evidence .not previously available, or (iii) need to correct a clear error of law or to prevent manifest injustice.” Brooks v. Roberts, 882 So.2d 229, 233 (¶ 15) (Miss.2004). We must ask whether it was legal error or manifest injustice to let the October 2008 judgment stand based on the notice provided Henry. Because the award for medical expenses was not part of Wanda claim to the equity in the property, we analyze the property division and the medical expenses separately.
A. The Property-Division Award
¶ 21. On appeal, Henry raises the following three arguments why the mailed notice was insufficient: (1) Rule 5 notice is insufficient because thirty-months had passed between the 2006 judgment of divorce and the 2008 hearing; (2) the chancery court failed to comply with Rule 5 because notice was not sent to Henry’s attorney; and (3) Henry proved at the reconsideration hearing that he did not receive actual notice, rebutting the presumption of completed service.
¶ 22. We begin by noting the property-division hearing was a Rule 5 and not a Rule 81 matter. Com/pare M.R.C.P. 5 with M.R.C.P. 81. In civil litigation, once parties are initially served and the trial court gains personal jurisdiction over them, Rule 5 provides expedited procedures for serving subsequent pleadings, orders, and notices, including the notice of hearing mailed to Henry in July 2008. M.R.C.P. 5(a) & cmt. (noting Rule 5 “presupposes that the court has already gained jurisdiction over the parties”). In domestic matters, the chancery court retains jurisdiction over the parties in matters concerning the divorce, even after the divorce is final. Powell v. Powell, 644 So.2d 269, 274 fn. 4 (Miss.1994). However, our rules recognize that new disputes may arise between divorced couples that require special procedures, provided in Rule 81, for notifying the other party of the new dispute. Carroll v. Carroll, 976 So.2d 880, 885 (¶ 9) (Miss.Ct.App.2007) (“A summons under M.R.C.P. 81 serves to provide due process and notify a party of a new dispute.”) (citing Sanghi v. Sanghi, 759 So.2d 1250, 1254 .(¶ 16) (Miss.Ct.App.2000)). But in contested matters that have yet to be resolved, Rule 5(b) notice “is all that is required for setting a hearing in the process for reaching the final judgment.” Id.
¶ 23. Although the Curtises divorced in April 2006, how the equity in the property was to be divided remained unresolved. Thus, the October 1, 2008 hearing did not concern a new dispute, requiring Rule 81 notice. Instead, both Henry and Wanda were aware of the impending hearing, having agreed in the property-settlement agreement to ■ hold a hearing after the properties were appraised. Henry cannot rely on the amount of time that passed between the 2006 property-settlement agreement and 2008 hearing to support his argument Rule 5 notice was insufficient. The record indicates Henry was at' least partially responsible for the delay in the appraisal and in dividing the property. *630 Henry enjoyed full possession of the marital home for over two years post-divorce and knew the day was coming when the equity would, be divided. Because the property division was an on-going matter and because Henry was aware of the need for a hearing on this issue, we find Rule 5 the appropriate procedure to provide Henry notice of the hearing.
¶ 24. Rule 5(b)(1) directs:
Whenever under these rules service is required or permitted to be made upon a party who is represented by an attorney of record in the proceedings, the service shall be made upon such attorney unless service upon the party himself is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to him; or by transmitting it to him by ¿lectronic means; or by mailing it to him at his last known address, or if no address is known, by leaving it with the clerk of the court, or by transmitting it to the clerk by electronic means.... Service by mail is complete upon mailing.
M.R.C.P. 5(b)(1).
¶25. Because Rule 5(b) requires notices be mailed to a party’s attorney, Henry argues the chancery, clerk violated Rule 5 by mailing the notice to him instead of Teel. But under the circumstances, the opposite is true. Had the chancery clerk sent the notice to Teel, the notice would not have been sufficient. “There are two basic exceptions to the rule that papers be served on the attorney. Under the first, service on a party is valid — indeed it is obligatory — if a party does not have an attorney or if the attorney has ceased to represent the party.” Duckworth v. Strite, 748 So.2d 794, 797 (¶.11) (Miss.Ct.App.1999) (quoting 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and-Procedure § 1145 (1987)). As of January 2008, the date of Teel’s suspension, Henry was no longer represented by Teel. See Telephone Man, Inc. v. Hinds County, 791 So.2d 208, 211-212 (¶¶ 14-16) (Miss.2001) (holding loss of right to practice law in Mississippi prevents attorney from being agent for client). And “[w]hile it is clear that service on a party’s attorney is sufficient, it is equally clear that service upon one not the attorney for the party is not.” Barber v. Barber, 608 So.2d 1388, 1340 (Miss.1992) (further noting notice is only validly served on attorney if attorney represents party in proceeding for which notice is given).
¶26. In Duckworth, notice of hearing sent directly to the defendant was proper because the defendant’s prior counsel had formally withdrawn, and the defendant had not notified the plaintiff that he had retained new representation. Duckworth, 748 So.2d at 797 (¶ 11). This court found the plaintiff “correctly mailed the notice directly to [the defendant] because at the time [the defendant] was not represented by counsel.” Id. at (¶ 12). Henry testified he knew Teel had been suspended. And Teel’s suspension was a matter of public record. Miss. Bar v. Teel, 35 So.3d 1206 (Miss.2008) (ordering Teel’s indefinite suspension from the practice of law in Mississippi). Between the January 2008 suspension and July 2008, when the notice was sent, no other attorney appeared as Henry’s attorney of record. Therefore, the chancery clerk correctly mailed the notice of hearing directly to Henry.
¶27. Finally, Henry argues the chancellor denied his petition for reconsideration because the chancellor erroneously relied on the “postal-acceptance rule,” a concept that specifically applies to insurance law, not chancery matters. According to Henry, he proved at the reconsideration hearing that he had trouble with the delivery of his mail and did not actually receive the notice of hearing, rebutting any *631 presumption that service was complete upon mailing. While the chancellor did discuss at the reconsideration hearing the postman being Henry’s agent, we need not get into the “postal-acceptance rule” to affirm the chancellor’s decision. Puckett v. Stuckey, 683 So.2d 978, 980 (Miss.1993) (finding appellate court not restricted by lower court’s reasoning when right result reached).
¶ 28. Rule 5 is explicit that “[s]ervice by mail is complete upon mailing,” not receipt. M.R.C.P. 5(b). And actual notice was neither required to satisfy Rule 5 nor necessary to comply with federal and state procedural due process requirements. U.S. Const., Amend. 14; Miss. Const., Art. 3, § 14; M.R.C.P. 5. See Aarco Oil & Gas Co. v. EOG Res., Inc., 20 So.3d 662, 669 (¶ 23) (Miss.2009) (citing Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 fn. 4, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983)) (noting actual notice is not required to satisfy due process in every instance). What due process did require was “notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.” Aarco Oil, 20 So.3d at 669 (¶ 22) (quoting Mennonite, 462 U.S. at 795, 103 5,Ct. 2706).
¶ 29. The United States Supreme Court has “repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice.”' Tulsa Prof l Collection Servs., Inc. v. Pope, 485 U.S. 478, 490, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). The chancery clerk testified at the reconsideration hearing that she mailed the notice of hearing to Henry’s residence more than two months prior to the hearing. While Henry testified he was often away from home for long stretches driving his truck, he was afforded a sufficient window of time prior to the hearing to find the notice when he returned home between jobs. Further, while Henry testified he experienced problems with mail delivery to his home, there was no evidence he ever notified Wanda or the chancery clerk about these problems or requested they use another address to send him correspondence. Therefore, we find the notice of hearing mailed to Henry’s last-known addresses more than two months prior to the hearing was reasonably calculated under these circumstances to apprise Henry of the October 1 hearing and provide him an opportunity to be heard.
¶ 30. Because the notice of hearing complied with both Rule 5 and due-process requirements, we find no abuse of discretion in the chancellor’s denying Henry’s petition to reconsider the property award and, therefore, affirm.
B. The Medical-Expense Award
¶ 31. Although the hearing to determine the parties’ equities in the real property was proper, the chancellor’s permitting Wanda to present evidence of their child’s unpaid orthodontist bill and awarding Wanda $1,427' against Henry was not.
¶ 32. W^nda claims the expense was incurred pre-divorce and related to a temporary custody order issued prior to the 2006 judgment of divorce and property-settlement agreement. But nothing in the record supports this contention. What the record does contain is the property-settlement agreement. And in paragraph (D)(6) of the property settlement, Henry had agreed to pay half of his son’s doctor and hospital bills not covered by insurance. Therefore, unlike the real-property division, the issue of Henry’s obligation toward his son’s medical expenses was not a contested matter yet to be resolved. Carroll, 976 So.2d at 885 (¶ 9). Instead, Henry had agreed in the divorce judgment to pay Wanda half of the bill. At the October *632 1 hearing, Wanda was not presenting a claim or credit against the equity in the property but was instead attempting to enforce the divorce judgment requiring Henry to pay half the orthodontist bill.
¶ 33. Enforcing compliance with a court order is a matter of civil contempt. Dennis v. Dennis, 824 So.2d 604, 608 (¶ 8) (Miss.2002) (describing a civil contempt order as one that’s “primary purpose is to enforce the rights of private party litigants or enforce compliance with a court order”). As such, the. medical-expenses issue required service under Rule 81. M.R.C.P. 81(d). See Chasez v. Chasez, 935 So.2d 1058, 1061 (Miss.Ct.App.2005) (holding Rule 81 applies to a contempt issue arising in domestic matter).
¶ 34. A Rule 81 summons must contain “a statement notifying a party of the time and place for the hearing, and that no answer is needed.” Chasez, 935 So.2d at 1061 (¶ 9) (citing Sanghi v. Sanghi, 759 So.2d 1250, 1256 (¶ 28) (Miss.Ct.App. 2000)). In Chasez, after the mother filed a motion for contempt for the father’s failure to pay his child-support obligation, the mother’s attorney mailed the notice of hearing to the father, who was not represented by an attorney. Chasez, 935 So.2d at 1060 (¶ 4). “While these ‘notices’ did contain most of the required information, they did not contain a statement that the respondent was not required to respond in writing.” Id. at 1061 (¶ 10); see Sanghi, 759 So.2d at 1256 (¶ 28). This court found the notices “were clearly not Rule 81 summonses.” [2] Id.
¶ 35. Here, as in Chasez and Sanghi, there was no statement that Henry was not required to respond in writing. Moreover, because there was no petition for contempt filed, there was no petition for contempt attached to the notice of hearing that would have notified Henry that Wan-da was seeking a judgment for the unpaid bill. Unlike the property-division issue, which Henry knew was an “old dispute” still pending for resolution before the chancellor, Henry had no reason to know from the notice of hearing about the “new dispute” over the orthodontist bill. Carroll, 976 So.2d at 885 (¶ 9) (Rule 81 summons not only satisfies due process but also notifies party in a domestic matter of a new dispute.). Therefore, the notice of hearing was not reasonably calculated to apprise Henry of his opportunity to contest an award for unpaid medical expenses. Aarco Oil, 20 So.3d at 669 (¶.22) (quoting Mennonite, 462 U.S. at 795, 103 S.Ct. 2706).
¶ 36. Because it was a clear error to hear evidence on the medical-expense issue and award Wanda $1,474 without properly summoning Henry, the chancellor should have granted Henry’s motion to reconsider on this issue. Instead of reversing and remanding on this issue, we vacate the award as no motion for contempt was ever made, and no Rule 81 summons was properly given.
CONCLUSION
¶ 37. Mississippi’s civil procedure rules regarding service are designed to provide litigants due process. In an unresolved domestic matter, where the parties have already been properly summoned before the chancery court and are aware of the on-going nature of the litigation, Rule 5 provides an efficient means of providing notice of hearing. But when, post-divorce, an ex-spouse brings before the chancery court an issue that had been resolved by *633 the divorce judgment, Rule 81 specific summons requirements are designed to provide notice that a new dispute has arisen.
¶ 38. Under the unique facts of this case, we find that while service under Rule 5 was sufficient to provide notice of the hearing to divide the equity in the marital real property, service of a summons under Rule 81 was required before conducting a hearing on unpaid medical expenses for the minor child. We, therefore, affirm the denial of Henry’s petition to reconsider as it concerns the property division award but vacate the award of $1,474 for medical expenses.
¶ 39. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED IN PART AND VACATED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE PARTIES.
LEE, C.J., IRVING, P.J., MYERS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. GRIFFIS, P.J., CONCURS IN PART AND IN THE RESULT. CARLTON, J., CONCURS IN RESULT ONLY.

. Mississippi Code Annotated section 93-5-2 (Supp.2010) allows divorcing couples to agree in writing to all child-custody, child-maintenance, and property-rights issues, subject to the chancellor finding the provisions of their agreement adequate and sufficient. Massingill v. Massingill, 594 So.2d 1173, 1176 (Miss.1992). But if the parties cannot agree on particular child-custody, child-maintenance, or property-rights issues, they may consent to be divorced and permit the chancellor to decide the particular issues not agreed upon. Id. at 1176-77. Such consent: (1) must be in writing and signed personally by both parties, (2) must state that the parties voluntarily consent to permit the court to decide the issues *628 upon which the parties cannot agree, (3) must specifically set forth the issues upon which the parties are unable to agree, and (4) must state that the parties understand that the decision of the court shall be a binding and lawful judgment. Id. at 1177.

. We nevertheless affirmed the chancery court based on the father’s failure to contest insufficiency of service of process when he appeared before the chancery court. Chasez, 935 So.2d at 1062 (¶ 12).