976 So.2d 880 (2007)
Roger A. CARROLL, Appellant
v.
Anna F. CARROLL, Appellee.
No. 2005-CA-01770-COA.
Court of Appeals of Mississippi.
May 1, 2007.
Rehearing Denied November 20, 2007.
*882 Joy B. Wolfe, John F. Perry, Starkville, attorneys for appellant.
*883 Carter Dobbs, attorneys for appellant.
Before KING, C.J., CHANDLER and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. Following a trial on the merits in the Monroe County Chancery Court, Anna Carroll was granted a divorce upon the ground of adultery. Aggrieved, Roger perfected the present appeal, asserting seven assignments of error which we quote verbatim:
I. The chancellor abused his discretion by entering the interim order on February 1, 2005 and ordering Roger Carroll to comply with a contempt order that was entered when the trial court did not have jurisdiction.
II. Roger was prejudiced when forced to proceed at trial pro se after the court erred in allowing Roger's attorney to withdraw.
III. The chancellor abused his discretion by not equitably distributing the marital assets and liabilities.
IV. The trial court's award of alimony is against the overwhelming weight of the evidence and so excessive as to constitute an abuse of discretion.
V. The chancellor erred in setting the amount of child support.
VI. The chancellor erred when he found Anna was unable to pay her attorney's fees and abused his discretion when he awarded her attorney's fees.
VII. The chancellor erred when he failed to allow Roger's inability to pay on two contempt matters.
Anna, additionally, contends that this Court should award her attorney's fees on appeal.
¶ 2. While we affirm on all issues other than III and IV, we find that the award of $4,000 per month in alimony is ambiguous as to whether it was awarded as a division of marital assets payable in monthly installments or whether it was awarded as periodic alimony. We reverse and remand for proceedings consistent with this opinion.

FACTS
¶ 3. This action was initiated when Anna Carroll filed a complaint for divorce against Roger Carroll on September 19, 2003. Roger retained his first of three attorneys who represented him in this action, and he drafted and filed an answer to the complaint. On January 26, 2004, an agreed temporary order was entered providing for, inter alia, temporary alimony and child support. On February 23, 2004, Anna filed a motion for contempt. The record is replete with more motions and orders setting, and then continuing, the contempt matter. On September 28, 2004, the chancery court entered an order permitting Roger's initial counsel to withdraw. Sometime prior to November 29, 2004, Roger retained a second attorney to represent him.
¶ 4. On December 1, 2004, the contempt matter was set for hearing, but on that day, Roger's second attorney announced in open court that he felt he had an ethical conflict in representing Roger, and sought to withdraw. While Roger did not attend the December 1, 2004 hearing, he later testified he had actual knowledge that the hearing was set for that date. The chancery court continued the contempt matter to December 14, 2004. A motion to withdraw was filed on December 2, 2004, and notice was mailed to Roger that same day. After repeated attempts at personal service, including telephone calls between the attorney and Roger, personal service of the motion to withdraw was completed upon Roger on December 13, 2004. Further, *884 while personal service of the motion to withdraw was completed, Roger successfully avoided personal service by the Monroe County Sheriff's Department of notice of the resetting of the contempt motion for December 14, 2004. The sheriff's department did, however, inform him of that date by telephone.
¶ 5. On December 14, 2004, Roger's counsel appeared in chancery court, and the court granted leave to withdraw. Roger did not make an appearance. Following Anna's December 14 presentation of evidence, the chancery court entered orders finding Roger in contempt for failing to comply with discovery by not answering a second set of interrogatories and for failure to pay, inter alia, temporary support and house payments.[1] As discussed later in this opinion, one of Roger's central contentions is that this order was improper, because a M.R.C.P. 81 summons had not issued concerning this hearing. However, as we also will discuss later, there is no contention that service of process was improper when the action commenced, nor any contention that Roger's attorney was improperly noticed of the December 14 hearing, or that Roger lacked actual knowledge of the hearing. At the December 14 hearing the chancellor also set February 1, 2005 as the date for a trial on the merits. Additionally, Roger contends there was error in failing to issue a M.R.C.P. 81 summons for that date as well.
¶ 6. Roger appeared pro se for the February 1, 2005 trial. Interestingly, on some date prior to the trial, the chancellor directed the Monroe County Sheriff to take Roger into custody and hold him (1) until he purged himself of contempt by paying approximately $25,000 in past due support and mortgage payments, and (2) until the trial itself commenced. During the noon recess, he was again taken into custody and held until the trial recommenced. While this action by the chancellor may be seen as extreme, it is indicative of the difficulty the chancery court was having in securing either Roger, or an attorney able to represent him without ethical conflict, to reach a resolution of the divorce complaint. The record is replete with references to Roger evading process servers and deputy sheriffs attempting to deliver service upon him. Perhaps Roger's most flagrant action was at a hearing in Aberdeen, Mississippi, held on one of Anna's motions for contempt. The chancery court recessed for lunch, and with no notice to the chancery court or Anna's attorney, Roger went to the federal courthouse and filed a petition for bankruptcy of his sand and gravel business and then failed to return to the chancery court. Roger later admitted that he filed the bankruptcy petition for the purpose of stopping the contempt hearing. Moreover, Roger himself had valued his gravel business at $827,500 prior to trial, but after dismissing the bankruptcy petition, Roger sold the gravel business for $500,000 and then paid more than $190,000 of the proceeds to his mother, even though there was no note due payable from the business to her. At any rate, a review of the record does show good cause for the chancellor to have determined that, having once gotten Roger into the courthouse, securing his continued presence was an ongoing concern.
¶ 7. Following the February 1, 2005 trial, the chancellor did the following: awarded Anna the use and possession of the marital home, ordered Roger to pay off two mortgages on the home, awarded *885 Anna one-half of the proceeds of Roger's sand and gravel business, awarded Anna a 2001 Nissan Xterra after determining it had been a gift from Roger to her, ordered Roger to pay alimony of $4,000 per month, ordered Roger to pay child support of $500 per month,[2] and ordered Roger to pay Anna's attorney's fees of $42,890. Subsequently, Roger retained his third attorney, and perfected the present appeal.

DISCUSSION
¶ 8. The applicable appellate standard of review is that a chancellor's findings of facts should not be disturbed unless "manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Isom v. Jernigan, 840 So.2d 104, 106(¶ 6) (Miss.2003) (quoting Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990)). However, the interpretation and application of law are reviewed de novo. Isom, 840 So.2d at 106(¶ 6).
I. Necessity of a M.R.C.P. 81 Summons
¶ 9. This Court has previously addressed when a M.R.C.P. 81 summons is required:
A domestic relations case remains subject to recurring motions even after all prior contested matters are resolved. A pleading to alert the other party that a new dispute has arisen is in the nature of awakening a dormant suit, distinguishable both from commencing new litigation and from just filing a motion in active litigation.
Sanghi v. Sanghi, 759 So.2d 1250, 1254(¶ 16) (Miss.Ct.App.2000). See also Isom, 840 So.2d at 106(¶ 7). A summons under M.R.C.P. 81 serves to provide due process and notify a party of a new dispute. Sanghi, 759 So.2d at 1254(¶ 16). Thus, where there has been no final judgment upon a complaint for divorce, M.R.C.P. 5(b) notice is all that is required for setting a hearing in the process for reaching the final judgment. Id. As M.R.C.P. 81(d)(6) provides, "Rule 5(b) notice shall be sufficient as to any temporary hearing in a pending divorce or separate maintenance, custody or support action provided the defendant has been summoned to answer the original complaint." Moreover, the entry of an appearance in a proceeding where M.R.C.P. 81 notice has not been given serves to waive any error. Isom, 840 So.2d at 106(¶ 6).
¶ 10. Therefore, a M.R.C.P. 81 summons was not necessary for the December 14, 2004 hearing on whether Roger was in contempt for failing to comply with the agreed temporary order for support. Further, even assuming arguendo that M.R.C.P. 81 was applicable to a hearing to enforce a temporary order in ongoing litigation, Roger's attorney's appearance at the December 1, 2004 hearing waived any error. Similarly, a M.R.C.P. 81 summons was not necessary to apprise Roger of the February 1, 2005 trial. There is no merit to this assignment of error.
II. Prejudice from Proceeding pro se
¶ 11. Roger contends that the chancellor erred in allowing his second attorney to withdraw six weeks prior to the trial, and that this error prejudiced him by forcing him to proceed pro se. This Court has previously found two weeks' notice of an attorney's withdrawal is sufficient to allow a party opportunity to retain new council. Hood v. Mordecai, 900 So.2d 370, 376(¶ 16) (Miss.Ct.App.2004). *886 In this case, Roger had, at a minimum, four weeks notice of his second attorney's withdrawal. There is no merit to this assignment of error.
III. The Chancellor Erred in Not Equitably Distributing the Marital Assets
IV. The Award of Alimony was Excessive
¶ 12. As these two issues are intertwined, they will be discussed together. Periodic alimony is only considered after the marital estate is equitably distributed and there is a finding that one of the parties suffers a disparity of income and living standards. Lauro v. Lauro, 847 So.2d 843, 848(¶ 13) (Miss.2003).
¶ 13. Roger contends that there was no valuation of the marital assets and the findings of fact were not sufficient to meet the dictates of Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). The record discloses that the assets found to be marital property were valued by the parties's discovery disclosures and testimony. These were the marital home, the furniture and appliances and the sand and gravel business. Roger appears also to be contending that the valuations were incorrect, but it cannot escape notice that he intentionally refused to comply with the discovery in this case. Given our scope of review, this Court cannot say the chancellor was in manifest error.
¶ 14. The Ferguson factors require consideration of the following when the court is attempting to equitably divide marital property:
(1) Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
(2) The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
(3) The market value and the emotional value of the assets subject to distribution.
(4) The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
(5) Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
(6) The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
(7) The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
(8) Any other factor which in equity should be considered.
Ferguson, 639 So.2d at 928.
¶ 15. From the bench opinion, it is clear that the award of $4,000 per month in *887 alimony was based, at least in part, upon the chancellor's efforts to secure at least some of the marital property from Roger's control and complete its transfer to Anna. The chancellor had every reason to suspect that Roger would seek to avoid paying over to Anna her share of the sand and gravel business found to be a marital asset, due to the fact that Roger had sold the business prior to trial for what appears to be less than full value, and then transferred part of the sale proceeds to his mother's control. Further, the record is replete with Roger's refusals to comply with temporary support, and his incarceration to compel compliance. The record also discloses that after the final decree was entered, Roger again refused to comply and was incarcerated two more times. Roger contends that he is simply unable to comply, but it is clear that when given the choice between compliance or going to jail, he can obtain thousands of dollars. He contends that he borrows money from his mother, but it is difficult to give credence to this when it is clear that he gave his mother $190,000 of the marital estate. The record does not disclose the exact amount Roger has paid to Anna since the chancellor entered the final decree, but it appears to be in excess of $50,000, and additionally it appears he has paid-off at least one of the two mortgages on the marital home, which the chancellor awarded to Anna.
¶ 16. However, the chancellor stated that the alimony will continue until a subsequent order of the chancery court decrees otherwise. Therefore, the award resembles an award of permanent alimony. The distinction between alimony based upon a lump sum but payable in monthly installments and periodic alimony is not merely of form. See Welch v. Welch, 755 So.2d 6, 7-12 (¶¶ 5-35) (Miss.Ct.App.1999). Rather, they are distinct: periodic alimony is taxable to the recipient, while division of the marital estate is not; periodic alimony ceases upon death, while a division of the marital estate may be claimed from a decedent's estate; periodic alimony ceases upon remarriage, while installment payments from a division of a marital estate do not. Moreover, as this case illustrates all too well, lump-sum alimony is not subject to modification upon unforeseen loss of income, while periodic alimony is subject to modification. Therefore, while we certainly understand the chancellor's decision to award $4,000 per month, we cannot find that the record shows that the chancellor's ruling was calculated to eliminate Anna's need for periodic alimony and eliminate future frictional contact between the parties. Perhaps more importantly, we cannot ascertain whether Roger has transferred the marital property as ordered.
¶ 17. Concerning the issue of periodic alimony, in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993), the supreme court stated the following factors are to be considered by the chancellor in arriving at findings and entering judgment for alimony:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and *888 at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or,
12. Any other factor deemed by the court to be `just and equitable' in connection with the setting of spousal support.
¶ 18. Neither the bench opinion nor the final decree granting the divorce indicates an Armstrong analysis was made. While an appellate court will affirm an award of alimony without a complete recitation on the record of an Armstrong analysis enunciating each factor, we must reverse if it is clear no such analysis occurred, or if the information in the record does not support a chancery court's findings. Godwin v. Godwin, 758 So.2d 384, 387 (¶¶ 10-11) (Miss.1999). Therefore, we must reverse and remand this cause for a determination of whether permanent periodic alimony is justified. Moreover, the chancellor himself stated that he "was astounded" that Anna testified she only earned $250 to $270 every two weeks in take home pay. Anna was forty-one years old at the time of the trial, and since then the couple's only child has married and left the marital home. If rehabilitative alimony is appropriate, the chancellor, of course, has the discretion to order it. Furthermore, the record indicates that Roger has essentially become voluntarily unemployed in an effort to avoid showing any means to pay Anna the alimony ordered. If the chancellor intended to award a lump sum in the division of marital assets, Roger might at least find the initiative to put the divorce behind him, and resume what the record shows has been a productive career. Moreover, from the record it is impossible to see why Anna would need $4,000 per month in periodic alimony under an Armstrong analysis, unless the award was meant as an equitable distribution.
V. The Award of Child Support was Excessive
¶ 19. Roger was ordered to pay $500 per month in child support. The record indicates that he did so and that the minor child is now emancipated. This issue is moot.
VI. Anna's Attorney's Fees Should Not Have Been Assessed to Roger and Anna's Claim for Attorney's Fees on Appeal
¶ 20. "Generally the award of attorney's fees in a divorce case is left to the discretion of the trial court." Cheatham v. Cheatham, 537 So.2d 435, 440 (Miss.1988). Absent an abuse of discretion or manifest error, the chancellor's decision about attorney fees will not be disturbed by the reviewing court. Creekmore v. Creekmore, 651 So.2d 513, 520 (Miss.1995). At the time the chancellor made the award of some $42,890 in attorney's fees, Anna had no income, and Roger was refusing to pay the agreed temporary alimony unless it was extracted by incarceration. Moreover, the chancellor's bench opinion lists with detail how he arrived at this figure. If Roger had complied with discovery and avoided multiple motions for contempt, and the setting and resetting of hearings on these motions, along with necessitating Anna's attorney to attend the hearings, the figure would be much lower. Given the egregious facts of this case, we cannot find the award to be an abuse of discretion. However, we also note that at the time of the briefing, Anna's attorney had secured portions of the award, and Anna had also received over $50,000 in support, the removal of at least one of the two mortgages on the marital home, and the Nissan automobile. *889 Therefore, we decline to assess Roger the cost of her attorney's fees on appeal. However, nothing in this opinion should be read as limiting the chancellor's discretion in assessing Anna's attorney's fees to Roger should he continue to contemptuously resist the orders of the chancery court.
VII. Roger's Inability to Pay the Support Ordered in the Final Judgment
¶ 21. The facts of this case indicate Roger had, shortly before trial, over $500,000 in his personal possession, a working farm, a helicopter, and a mistress with whom he continued to live and financially support after the divorce. We do not find that the chancellor was manifestly wrong or clearly erroneous in his decision to award the support. This issue is without merit.

CONCLUSION
¶ 22. In conclusion, we reverse and remand this cause for the chancellor's determination of whether Roger has complied with the requirements the chancery court set forth in dividing the marital estate, and if not, what he must do to comply, as well as whether periodic or rehabilitative alimony is needed.
¶ 23. THE JUDGMENT OF THE MONROE COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ROBERTS AND CARLTON, JJ., CONCUR. GRIFFIS, J., CONCURS IN RESULT ONLY.
NOTES
[1] Roger's second attorney completed his answer to these interrogatories, but Roger would not sign them.
[2] Additionally, Roger retained business and farm interests found to be non-marital property.