ISHEE, J.,
for the Court:
¶ 1. Charles T. Scarborough and Mildred T. Rollins were adjoining landowners, sharing one common boundary. In July 2006, Scarborough filed a complaint seeking to quiet and confirm his title to the property, as well as a determination from the trial court as to ownership of culverts which were on Rollins’s property. Rollins filed a counterclaim seeking to quiet and confirm her title and seeking an award of damages against Scarborough for slander of title, malicious trespass, the value of the culverts and their installation, and damages resulting from her inability to sell her property during the pendency of litigation.
¶ 2. The chancellor determined that the gravel road, which is to the north of Scarborough’s property and to the south of Rollins’s property, was the boundary between the parties. Scarborough appeals from that judgment and asserts five issues:
I. The actual boundary line between Scarborough’s and Rollins’s property is the quarter section line between the Northwest quarter and the Southwest quarter of Section 10, Township 18 North, Range 14 East, of Oktibbeha County, Mississippi.
II. Rollins did not prove her claim of adverse possession of the land located between her south boundary line and the north boundary of the gravel road by clear and convincing evidence.
III. The gravel road is not a boundary line.
IV. The chancery court should have continued the trial of this cause as to the issues involving the culverts due to Scarborough’s indictment for grand larceny and the pen-dency of a criminal case against him.
V. The chancery court’s award of actual and punitive damages and attorney’s fees to Rollins should be reversed.
Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 3. Scarborough and Rollins are adjoining landowners in Oktibbeha County, Mississippi. Scarborough’s property is undeveloped and had been previously used as a pasture. His property is approximately 4.5 acres. He purchased the property from Thurman and Mabel Ruth Betts. The deed from the Bettses retained a permanent and perpetual easement for ingress and egress located in the north thirty-five feet of the property.
¶4. Rollins’s property is approximately 2.88 acres. The Village Oaks apartment complex is located on her property. Prior to Rollins purchasing the property, the Black family had owned the property since 1966. The apartments were already located on the land which Rollins purchased prior to the time that Scarborough purchased his land.
¶ 5. Based upon her survey, Rollins believed that she owned a portion of the gravel road to the south of her apartment buildings. Rollins testified that she claimed the apartments and yard up to the property line she was shown on her deed and that she had continuously maintained the yard since becoming owner of the property. On the contrary, Scarborough believed that the gravel road was located totally on his property and that he owned some property north of the gravel road toward Rollins’s apartment buildings. Scarborough testified that he located the northwest corner of his property and put up a visible fence post four-feet high at the location. Scarborough also testified that once a year, he went over to the area north *384 of the road and mowed the grass and picked up trash.
¶ 6. Rollins testified that she repaved the parking lot of the apartment complex to repair large holes caused by the city garbage trucks. When Rollins found out that Scarborough owned the property to the south, she called him. Rollins testified that she told Scarborough that she knew she owned half of the road, and he owned the other half. Rather than going over the new asphalt parking lot, Rollins asked Scarborough if he had any problems with the garbage trucks using the gravel road to access the dumpster behind her apartments. According to Rollins, Scarborough said he had no problem with this arrangement. Rollins testified that she never asked Scarborough for permission to install culverts and that Scarborough told her that he knew she owned part of the road.
¶ 7. Scarborough testified that Rollins called him and said that she owned the apartments north of his property and asked him for permission to put culverts in the ditch. He denied telling Rollins that she owned any part of the road. Scarborough testified that Rollins told him she had a survey that showed she owned part of the road, and he replied that perhaps they both owned part of the road.
¶ 8. In April 2004, Rollins installed culverts in the ditch north of the gravel road. She testified that John Black, owner of the easement over the gravel road to the house west of Scarborough, told her she could use the gravel road.
¶ 9. In October 2005, Scarborough sent Rollins a letter. According to Rollins, the letter advised her that Scarborough wanted $200 per year for the use of the gravel road. If Rollins failed to pay, Scarborough threatened to remove the culverts. Rollins testified that her attorney advised her not to pay Scarborough because doing so could set a precedent that she owed him money and that he could then demand she pay a higher fee the next year. Rollins followed her attorney’s advice and did not pay Scarborough.
¶ 10. The next month, in November 2005, Rollins received a phone call from her apartment manager saying that someone was at the back of the apartment complex with a large truck and some machinery removing her culverts. Once the police arrived at the scene, the culverts were already gone. The ground markers that were placed when Rollins bought the property were either no longer on the property or not visible.[1] Rollins also asked surveyor A.L. Goodman III to recheck the property lines for her. Rollins also had surveyor Mike Brent survey the property.
¶ 11. Following the theft of the culverts, Rollins signed a criminal affidavit against Scarborough, and soon after, Scarborough was arrested for grand larceny of the culverts. His criminal charge is currently pending in the Oktibbeha County Circuit Court. After his arrest, Scarborough hired surveyor Dr. Herbert King, his former student, to survey his property. Thereafter, on July 28, 2006, Scarborough filed his complaint in the Oktibbeha County Chancery Court to quiet and confirm title and to remove cloud from title. Rollins filed a counterclaim seeking to quiet and confirm her title and seeking an award of damages against Scarborough for slander of title, malicious trespass, the value of the culverts and their installation, and damages resulting from her inability to sell her property during the pendency of the litigation.
*385 ¶ 12. The chancery court determined that the gravel road was the boundary between the parties’ properties and that Rollins had proved by clear and convincing evidence that she owns, by adverse possession or deed, all of the property north of the north boundary line of the gravel drive and confirmed title to Rollins in that property. The chancery court confirmed title to Scarborough for the property south of the gravel road.
STANDARD OF REVIEW
¶ 18. This Court employs a limited standard of review on appeals from the chancery court. We will not disturb a chancellor’s findings unless those findings were manifestly wrong, clearly erroneous, or if the chancellor employed an erroneous legal standard. Carroll v. Carroll, 976 So.2d 880, 885 (¶ 8) (Miss.Ct.App.2007) (citing Isom v. Jernigan, 840 So.2d 104, 106 (¶ 6) (Miss.2003)). However, we will review questions of law under a de novo standard. Id. (citing Isom, 840 So.2d at 106 (¶ 6)).
DISCUSSION
I. Boundary Line
¶ 14. Scarborough alleges the chancery court erred in finding that the boundary line between Scarborough’s and Rollins’s properties is a gravel road. He also alleges that the chancery court erred in finding that Rollins proved her claim of adverse possession. Scarborough claims that the actual boundary line between his and Rollins’s properties is not the gravel road, but the quarter section line between the northwest quarter and southwest quarter of section 10, Township 18 North, Range 14 East of Oktibbeha County, Mississippi.
¶ 15. Dr. King, the surveyor hired by Scarborough, surveyed the property several times. His survey descriptions differ slightly from the deed description. As a result of Dr. King’s surveys, the descriptions in Scarborough’s complaint and in the evidence presented at trial vary somewhat from Scarborough’s deed.
¶ 16. Scarborough’s property is bounded on the north, and Rollins’s property is bounded on the south by a road labeled “gravel drive” by Dr. King. The road is approximately twenty-feet wide. The area in dispute is along the entire north line of Scarborough’s property and is about 611 feet east and west.
¶ 17. According to testimony by Dr. King, the most reliable monument he found was a two-inch galvanized post at the northwest corner of Scarborough’s property. There was also a 5/8 inch rebar near this point. Dr. King further testified that even though there were a number of monuments along the line, the most critical monument he used was an old fence found in several spots along the line. Dr. King projected his lines from the west to the east from the galvanized post and the 5/8 inch rebar along the old fence line to conclude that the disputed area was within Scarborough’s description. On Dr. King’s survey of the property, there are two red lines — one dashed and the other solid. Dr. King testified that either of the lines could be the boundary line, but that Rollins could not own any property between the gravel road and either red line.
¶ 18. Rollins had two surveyors survey the property — Goodman and Brent. Goodman’s survey did not show the gravel road or Scarborough’s property; the chancery court did not find Goodman’s survey to be helpful. Goodman’s survey was prepared for Rollins’s loan closing. Goodman had observed Rollins’s property for over thirty-five years. Goodman testified that the north boundary of the gravel road had always been considered to be the south boundary of Rollins’s property. Brent’s *386 survey of the property shows all of Rollins’s property stated in her deed north of the centerline of the gravel road. Brent also located the approximate area of the culverts installed by Rollins and removed by Scarborough.
¶ 19. Testimony was heard from several witnesses during the trial. H.D. Webb, Jr., a consultant with the city of Starkvihe, Mississippi and the city’s former City Engineer, presented a tax map of Starkville to the chancery court. The tax map indicated that the gravel road is north of Rollins’s property and south of Scarborough’s property. Webb testified that the gravel road is not considered a city street; therefore, it was not maintained by the city, although it might have been a public road at one time.
¶ 20. Black testified that he sold Rollins her property. Black stated that since 1966 until he sold the property to Rollins, his family used the north line of the gravel road as their boundary line. He testified that the use of the property included mowing the grass, installing a gas line in the ditch on the north side of the road, and paying taxes on the property. Black also testified that he has been familiar with the Scarborough property since he was a child. He stated that there is a fence approximately four feet south of the gravel road and that horses grazed up to that fence. He testified that he never saw any evidence of a fence north of the road. Black stated that he owned the house to the west of the property and used the gravel road daily, and he stated that he never saw Scarborough use any property north of the gravel road.
¶ 21. Andy Fultz, a lifelong resident of Oktibbeha County, testified that he has been familiar with Rollins’s property since the apartments were built. He stated that he mowed the grass on the property in the 1970s and 1980s. He testified that he always mowed the grass to the north boundary line of the gravel road. He stated that there was a fence on the south side of the road about ten feet south of the road. Fultz testified that he never saw any evidence of a fence north of the road and never saw Scarborough north of the road until September 2007 when he, as a police officer, was called to a disturbance that was reportedly caused by Scarborough.
¶ 22. Scarborough testified that he purchased his property in 1976. According to Scarborough, he sometimes used the gravel road and sometimes mowed the grass on the north side of the driveway with a bush hog. There was no evidence or testimony presented to corroborate Scarborough’s testimony. A photograph showing the south portion of Rollins’s property and the north portion of Scarborough’s property was presented to the chancery court. The property on the north side of the of the driveway appeared neatly groomed in the photograph and contradicted Scarborough’s testimony that he used a bush hog to cut the grass. From the photograph, the south side of the road appears to be grown up. We can infer that if Scarborough bush hogged any part of his property, it would have been on the south side of the road. Therefore, Scarborough’s testimony that he used any part of the property north of the road is not credible, and this issue is without merit.
II. Adverse Possession
¶ 23. Scarborough asserts that the trial court erred in finding that Rollins proved that she owned the property in dispute by adverse possession. Scarborough claims that Rollins failed to prove by clear and convincing evidence that her possession of the disputed grassy area down to the northern edge of the gravel road has been hostile, open, notorious, visible, *387 continuing, exclusive, and peaceful. Scarborough also claims that Rollins’s paying taxes and mowing the grass north of the gravel road by her and her predecessors in title, as well as Black’s installation of a gas line are not such adverse actions that gave him sufficient notice that he would know that Rollins was claiming the disputed area and that she was attempting to deny him ownership thereof and exclude him therefrom. Scarborough asserts that both he and Rollins used the disputed land, thus exercising joint use of the land; therefore, a claim of adverse possession is not supported. Scarborough also asserts that Rollins paid taxes only on the land situated north of her monumented south boundary line while he paid taxes on all of the land called for in his deed, including the gravel road and the land north of the gravel road up to Rollins’s south boundary.
¶ 24. To succeed on a claim of adverse possession, the claimant has the burden to prove each element by clear and convincing evidence. Rice v. Pritchard, 611 So.2d 869, 871 (Miss.1992). Adverse possession requires the claimant to prove that her possession or occupancy was: “(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful.” Id.
1.Under Claim of Ownership
¶ 25. The deed to Rollins’s property presented to the chancery court indicated that she owned the property at or near the disputed property. Evidence was provided to show that Rollins and her predecessors-in-title paid the taxes on all of the property north of the gravel road. However, Scarborough only paid taxes on the property that was south of the gravel road.
2.Actual or Hostile
¶ 26. Evidence was provided to the chancery court that for more than thirty-five years, no one other than Rollins and her predecessors-in-title, the Blacks, used this property.
3.Open, Notorious, and Visible
¶ 27. Black testified at trial that his family’s ownership of that land was open and obvious. He stated that everyone in Starkville, who was around the apartments, knew that the apartment complex owned the yard up to the edge of the gravel road.
4.Continuous and Uninterrupted for a Period of Ten Years
¶28. Testimony at trial from Black, Officer Fultz, and Goodman all provided that Rollins and her predecessors-in-title used the property for more than thirty-five years.
5. Exclusive
¶ 29. Testimony at trial from Black indicated that no one, until Scarborough, claimed to have used any part of the property in dispute.
6. Peaceful
¶ 30. Rollins testified that until September 2007, she and her predecessors-in-title enjoyed peaceful possession of the property-
¶ 31. We find that Rollins satisfied the elements required for adverse possession; therefore, this issue is without merit.
III. Actual and Punitive Damages
¶ 32. Scarborough alleges that the chancellor erred in finding that Rollins was entitled to an award of actual and punitive damages and attorney’s fees. He asserts that in looking to find that he had, in fact, converted Rollins’s culverts and in determining her award of actual and punitive damages and attorney’s fees, the chancery *388 court drew negative inferences from his assertion of his privilege against self-incrimination. Scarborough also contends that the evidence presented at trial to show that his trespass onto Rollins’s property was willful and wanton was skimpy. However, Scarborough does admit that he might have been mistaken about the location of his boundaries and that he might have been precipitate in how he handled what he conceived to be an invasion of his property.
¶ 33. Evidence was presented at trial that showed that Scarborough did in fact commit conversion when he trespassed onto Rollins’s property and removed the culverts that she had previously installed. “Conversion requires an intent to exercise dominion or control over goods which is inconsistent with the true owner’s right.” Walker v. Brown, 501 So.2d 358, 361 (Miss.1987). Scarborough removed the culverts from Rollins’s property, converted them to his own use, and did not return the culverts to Rollins. Conversion is an intentional tort; therefore, an award of punitive damages and attorney’s fees is proper. Evidence from the trial proves that Scarborough’s conduct in removing the culverts was willful and wanton, thus entitling Rollins to an award of actual damages. Therefore, we find that this issue is also without merit.
¶ 34. The chancery court properly held that the gravel road which is to the north of Scarborough’s property and to the south of Rollins’s property was the boundary between the parties and that Rollins was entitled to an award of actual and punitive damages and attorney’s fees due to the conversion of her property by Scarborough.
¶ 35. THE JUDGMENT OF THE CHANCERY COURT OF OKTIBBEHA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS AND MAXWELL, JJ., CONCUR.

. Rollins testified that it had been two years since she had seen the ground makers.