ISHEE, J.,
for the Court:
¶ 1. This is Roger Carroll’s second appeal regarding his divorce; he again argues that the chancery court erred in its assessment of alimony and division of the marital property. He asks this Court to review the chancellor’s most recent judgment, arising on remand from this Court, wherein the chancellor ordered Roger to pay alimony to his ex-wife, Anna Carroll. Roger now challenges the equitable distribution of the marital property, and asserts that the alimony award is excessive and is impossible for him to pay. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Roger and Anna Carroll were married in 1988. They had one child during the marriage, Jennifer Lynn, who is now an emancipated adult. After accusing Roger of having an affair in 2003, the couple separated, and Anna filed for divorce shortly thereafter. Roger eventually married the woman with whom he had an affair and they have at least one child together.
¶ 3. At the time of the separation, Roger owned a sand and gravel business that he purchased from his parents for approximately $450,000. He sold the business in 2004, two months before the trial on his divorce from Anna, for $500,000. When he sold the business, Roger paid his mother, Verna Mae Carroll, $191,772.29 to satisfy a promissory note Verna Mae had extended to him to purchase the business.
¶ 4. Thereafter, Anna filed suit in Monroe County Chancery Court against Verna Mae to set aside the $191,772.29 payment as fraudulent, claiming the money was marital property and subject to division by the chancery court during the divorce proceedings. The chancery court found $153,274.65 of the sum paid to Verna Mae was fraudulently conveyed, and ordered her to pay the money to the chancery court so that it could consider the money for the division of marital property. Verna Mae appealed to this Court, and we reversed and rendered, ordering that the payment for the sale of the business was not subject to division as marital property.
*479 ¶ 5. The same month that Roger moved out of the marital home in 2003, he purchased a helicopter for $85,000, which later crashed and was destroyed. With no insurance on the helicopter, Roger was forced to pay the bank loan on the helicopter for $60,000 through a certificate of deposit.
¶ 6. Many legal entanglements ensued between the couple and their attorneys before the trial on the merits of the divorce. One issue involved Roger being incarcerated in contempt of court for failing to make certain payments to Anna as previously ordered by the chancery court. After firing one attorney and a second attorney withdrawing due to an ethical conflict, Roger represented himself pro se at trial in 2005.
¶ 7. At trial, evidence was introduced to show that Roger’s income from the sand and gravel business averaged $18,575.78 per month, which was paid to him by the corporation for his personal living expenses. He also received an additional income of $9,498.75 from unreported cash sales. Roger offered no proof to refute the evidence or to demonstrate his income potential or indebtedness. Roger also acknowledged at trial that his “business was doing okay.” The principal assets of the parties consisted of the marital home and its contents, and the sand and gravel business owned by Roger.
¶ 8. After a trial on the merits, the chancellor granted the divorce and issued the final decree for divorce on February 15, 2005. Roger purged himself of his contempt the next day by paying the required sums to Anna, and he was released from custody. In its order, the chancery court ordered:
1.Anna to have the exclusive use and possession of the marital home and all of the furniture and appliances in the home;
2. Legal title of the marital home divested from 100% in Roger to 50% in Roger and 50% in Anna;
3. Roger to pay all indebtedness secured by the marital home, including both the first and second mortgages;
4. Anna awarded one-half of the net proceeds of the sale of the sand and gravel business previously owned by Roger should the sale be set aside by the Court in another action;
5. Anna’s 2001 Nissan Xterra automobile to be Anna’s separate property;
6. Roger to pay alimony each month in the amount of $4,000;
7. Roger to pay $500 per month in child support;
8. Roger to pay all school tuition and expenses for Jennifer’s college;
9. Roger to pay Anna $42,890 for her attorney’s fees, court costs, and expenses.
Roger filed a motion to amend the decree for divorce and for a new trial and a motion to stay, all of which was denied. However, the chancery court did clarify its previous order regarding title to the marital home, and allowed Roger the right to sell the home.
¶ 9. In May 2005, Anna filed a complaint for contempt of court against Roger, alleging that he had not paid all of the alimony payments as ordered by the chancery court, nor the attorney’s fees and mortgage payments on the marital home. The chancery court considered the issues during a motion hearing, and a judgment was rendered on August 24, 2005. The chancery court found Roger delinquent in the amount of $8,235.10 in alimony and mortgage payments. Shortly thereafter, Roger paid the money to Anna and again purged himself of the contempt of court for failure to pay.
*480 ¶ 10. However, Anna filed another contempt citation a few months later in October 2005. Therein, Anna asserted Roger had failed to pay child support and alimony. After a hearing, the chancery court found Roger in contempt of court and ordered him to pay $16,000 for past due alimony payments, $20,000 for Anna’s previous attorney’s fees, and $1,000 for Anna’s current attorney’s fees. Roger’s incarceration for this contempt was stayed for a period of ten days.
¶ 11. During the stay, Roger filed a notice of appeal, challenging the divorce decree, as well as the order denying his motion to amend the divorce decree and the previous order of contempt in August 2005. This Court affirmed the chancery court’s judgment in part and reversed and remanded in part, on the issue of the chancellor’s award of alimony, ordering the chancery court to conduct a proper Armstrong analysis regarding alimony. Carroll v. Carroll, 976 So.2d 880, 888 (¶ 18) (Miss.Ct.App.2007).
¶ 12. After conducting a hearing, the chancery court issued a bench order requiring Roger to pay Anna $2,749.04 per month as periodic alimony, and to pay her lump-sum alimony in the amount of the first and second mortgages secured by the marital home. The chancellor also imposed a lien on Roger’s property to secure payment of the alimony. Roger appeals this judgment.
STANDARD OF REVIEW
¶ 13. We will not disturb a chancellor’s findings of fact unless they are found to be “manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied.” Id. at 885 (¶ 8) (citations omitted). We review the interpretation and application of law de novo. Id.
DISCUSSION
I. Armstrong Analysis
¶ 14. Roger first argues that the chancery court abused its discretion in finding that he has the ability to earn in excess of $13,000 per month. He asserts that on remand, the chancellor failed to consider any new evidence regarding Roger’s economic status, and improperly relied on the trial evidence, which showed that Roger had substantial assets and income. He also claims that the chancellor conducted an analysis of the alimony award using Davis v. Davis, 832 So.2d 492 (Miss.2002), instead of using Armstrong v. Armstrong, 618 So.2d 1278 (Miss.1993).
¶ 15. Our review of the record shows the chancellor noted that he would allow amendments as necessary to consider the parties’ financial situation on the date of the remand hearing, per Rainer v. Rainer, 393 So.2d 475 (Miss.1981). Roger’s amended 8.05 financial statement claims that he earns $0 in income each month, but has more than $3,000 in expenses. Yet it is clear that Roger earned substantial income in the past, and that he possessed substantial assets, which were considered during the division of the marital property. The record shows Roger’s income from his sand and gravel business totaled $13,575.78 per month. He also earned $9,498.74 per month in “off the books” income. In addition, the same month Roger left Anna, he purchased a helicopter for $85,000.
¶ 16. The record also shows Roger purchased the sand and gravel business from his mother for approximately $450,000, with a down payment of $150,000 and monthly payments of $3,483.25 for ten years. Although Verna Mae testified at trial that Roger was a mechanic, Anna presented evidence to demonstrate that Roger had earning potential significantly greater than what a mechanic would earn *481 approximately each year. Roger argues on appeal that the recession from 2008 to the present has negatively affected his earning capacity. Again, he claims that he has no income, except what he makes by operating a track hoe machine.
¶ 17. The record reflects that the chancellor did, in fact, consider Roger’s amended 8.05 financial statement, in which Roger claimed to have $0 in income each month. However, the chancellor stated that he found it “incredible” that Roger would claim that he received no income each month, yet still had considerable living expenses.
¶ 18. While the chancellor was not required to do so on remand, he did conduct a Ferguson analysis concerning the division of the marital property to support his final judgment. Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). The chancellor also conducted an analysis regarding alimony, per the mandate of the remand.
¶ 19. On remand, this Court ordered the chancellor to conduct a proper Armstrong analysis “for a determination of whether permanent period alimony is justified.” Carroll, 976 So.2d at 888 (¶ 18). The Mississippi Supreme Court has held that the following factors are to be considered by the chancellor in arriving at findings and entering judgment for alimony:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or,
12. Any other factor deemed by the court to be ‘just and equitable’ in connection with the setting of spousal support.
Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).
¶ 20. In determining whether to make an award of periodic alimony, the following factors must be considered:
1. [T]he health of the husband and his earning capacity;
2. [T]he health of the wife and her earning capacity;
3. [T]he entire sources of income and expenses of both parties;
4. [T]he reasonable needs of the wife;
5. [T]he reasonable needs of the child;
6. [T]he necessary living expenses of the husband;
7. [T]he estimated amount of income taxes the respective parties must pay on their incomes;
8. [T]he fact that the wife has the free use of the home, furnishings and automobile;
9. [T]he length of the marriage;
10. [T]he presence or absence of minor children in the home;
11. [T]he standard of living of the parties, both during the marriage and at the time of the support determination;
12. [Fjault or misconduct;
13. [Wasteful dissipation of assets;
14. [T]he obligations and assets of each party;
*482 15. [T]he age of the parties;
16. [T]he tax consequences of the spousal support order; and
17. [S]uch other facts and circumstances bearing on the subject that might be shown by the evidence.
Davis v. Davis, 882 So.2d 492, 497 (¶ 19) (Miss.2002).
¶ 21. In his bench ruling on March 31, 2010, the chancellor gave a detailed factual account of his finding for alimony. Although the chancellor repeatedly refers to the Davis factors when conducting his analysis, he used the factors from both Davis and Armstrong. The chancellor’s analysis includes every factor required by both cases. Following the Armstrong factors outlined for the award of alimony, the chancellor found that:
(1) Roger has the ability to earn in excess of $13,000 per month. At one point, he also received over $9,000 per month in “off the books” income. In contrast, Anna works a maximum of thirty-two hours per week at a wage of $8.75 per hour. Additionally, Roger, in conjunction with his new bride, bought a $160,000 home. While Roger does not own the home, he has a lease purchase with the right to purchase, the house still requires a $1,200 payment each month.
(2) Both parties are in good health. As noted above, Roger’s past earnings have far exceeded Anna’s earnings. In addition, Anna has no specialized training or education. Therefore, the potential to increase her income is limited.
(3) Anna is favored with regard to her needs due to her age and skill set. In addition, the chancellor relied on Anna’s Rule 8.05 financial statement, which listed $2,321 as her combined monthly expenses.
(4) The parties have two debts secured by the marital home. Although Roger alleged he had additional indebtedness, no proof of this was elicited.
(5) The marriage lasted twenty-one years.
(6) There are no minor children in the home.
(7) Anna is forty-five years old and Roger is forty-nine years old.
(8) Anna does not have the earning capabilities to maintain the standard of living she enjoyed during the marriage.
(9) The alimony is deductible for tax purposes by Roger and considered taxable income to Anna. There are no other tax consequences of the alimony.
(10) This divorce was awarded on the basis of adultery. The chancellor clearly found the demise of the relationship was caused by Roger’s adultery.
(11) Roger sold the sand and gravel business for $500,000, but testified he could have possibly received a higher price. In addition, he did not consult Anna or the chancery court before selling the business. Roger also bought a helicopter during the marriage. The helicopter cost $85,000, was secured by a $60,000 certificate of deposit, and was not covered by insurance. Roger subsequently crashed the helicopter and was forced to pay the bank loan. It was also noted that in August 2002, Roger spent $11,412 on a helicopter engine.
(12) Roger has allowed both mortgages on the marital home to default. In addition, he has paid very little support to Anna as required by the chancery court.
¶ 22. The chancellor conducted a sufficient analysis of each of the Armstrong factors. We do not find that the chancellor was manifestly wrong or clearly erroneous in his award of periodic alimony. This issue is without merit.
*483 II. Impossible Financial Dilemma
¶ 23. Roger argues the amount of alimony awarded creates an impossible financial dilemma. The facts of this case indicate Roger has the potential to earn in excess of $13,000 per month. Roger has offered no proof to refute the evidence or to demonstrate his income potential or indebtedness. Roger claims in his amended 8.05 financial statement that he has no income. However, he still has monthly expenses in excess of $3,000. It is improbable that Roger earns no income yet still has considerable living expenses. In addition, shortly before the divorce, Roger owned a sand and gravel business worth $500,000. He also purchased an $85,000 helicopter and an $11,412 helicopter engine. Additional evidence shows that Roger has been capable of paying the required sums to Anna when faced with contempt charges. We do not find that the chancellor was manifestly wrong or clearly erroneous in his decision to award the support. This issue is without merit.
III. Mortgage Costs
 ¶ 24. Roger argues the award of lump-sum alimony in addition to periodic alimony constitutes double recovery. Double recovery is a doctrine that prevents unjust enrichment by prohibiting recovery for the same damages multiple times. Medlin v. Hazlehurst Emergency Physicians, 889 So.2d 496, 499 (¶ 15) (Miss.2004) (citing Medley v. Webb, 288 So.2d 846, 848 (Miss.1974)). The theory of double recovery applies to property settlements. Ory v. Ory, 936 So.2d 405, 412 (¶ 19) (Miss.Ct.App.2006) (refusing to give double credit for contributions to the marital home).
¶ 25. In this case, the award of periodic and lump-sum alimony does not constitute double recovery. The lump-sum payment of $89,375 covers the two mortgages secured by the marital home. The chaneel-lor ordered the payment to be made within sixty days of March 31, 2010. Roger argues the award of lump-sum alimony constitutes double recovery because the payments of $2,749.04 per month in period alimony also includes the mortgage payments for the marital home. However, the chancellor clearly outlined in his ruling that once the lump-sum amount was paid, Roger could petition the chancery court for a reduction in periodic alimony payments. After the mortgage debt is paid, Anna’s periodic alimony amount will no longer include payments for the mortgage. The chancellor even credited Roger for past alimony payments totaling $17,465, which reduced the amount of his lump-sum payment. We find the alimony award does not constitute double recovery. This issue is without merit.
IV.Attorney’s Fees
¶ 26. Anna requests that this Court order Roger to pay her attorney’s fees and expenses on this appeal. When allowed, this Court has generally granted attorney’s fees in the amount of one-half of what was awarded in the chancery court. Lauro v. Lauro, 924 So.2d 584, 592 (¶ 33) (Miss.Ct.App.2006) (citing Monroe v. Monroe, 745 So.2d 249, 253 (¶ 17) (Miss.1999)). The award of attorney’s fees is based on necessity rather than entitlement. Id.
¶ 27. In the Decree for Divorce on February 10, 2005, the chancery court found Anna was unable to pay her attorney’s fees and awarded her $41,587.50. We grant Anna’s motion for attorney’s fees on appeal, but only in the amount of $9,750.
¶ 28. THE JUDGMENT OF THE MONROE COUNTY CHANCERY COURT IS AFFIRMED. THE APPEL-LEE IS AWARDED ATTORNEY’S FEES ON APPEAL IN THE AMOUNT OF $9,750. ALL COSTS OF THIS AP *484 PEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING and GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. FAIR, J., NOT PARTICIPATING.