CARLTON, J.,
for the Court:
¶ 1. On April 4, 2012, the Grenada County Chancery Court entered a judgment of divorce on the ground of adultery for Claudia Joan Hill Renfro and John Malcolm Renfro (“Johnny”). In the judgment of divorce, the chancellor awarded each party one-half of the total of all of the marital property, both real and personal. Claudia now appeals, claiming that the chancellor erred in determining that certain real property at issue constituted marital property. Finding error in the chancellor’s judgment, we reverse and remand.
*94 FACTS
¶ 2. Claudia and Johnny married on August 20, 1987. The marriage produced no children. The parties separated on January 22, 2011, after Claudia discovered that Johnny engaged in an affair with their neighbor, Karen James.
¶ 3. At a trial held on February 17, 2012, Johnny and Karen admitted that they were living together and engaging in adultery. Johnny admitted that he made no effort to hide his affair with Karen from Claudia. Johnny testified that his and Karen’s affair began “about forty years” prior to the trial. Johnny and Claudia also testified regarding their marital property.[1]
¶4. After the trial, the chancellor requested the parties to submit their proposed findings of fact and conclusions of law. On March 23, 2012, the court filed its opinion, and on April 4, 2012, entered its final judgment granting Claudia a divorce from Johnny on the ground of uncondoned adultery.
¶ 5. The chancellor also equitably distributed the marital property. In her judgment, the chancellor listed the following property as marital property: the marital residence, two automobiles, a 401 (k) through Claudia’s employment, a certificate of deposit with Renasant Bank with a value of $28,538.32, a certificate of deposit with State Farm Bank valued at $33,252.32, and the cash value of New York Life Insurance in the amount of $21,131.60. The chancellor further stated that during the course of the marriage, Claudia received a conveyance of property from her mother, approximately 140 acres[2] of unimproved land. Based on the testimony, the chancellor determined that this property constituted marital property. In reaching this determination, the chancellor stated in her final judgment that Claudia “indicated that the development and management of the property as a tree farm was for the purpose of providing income for the parties’ retirement,” thus changing the normally nonmarital character of the property. The chancellor then found the total value of all marital property, both real and personal, amounted to $580,200.7, and she awarded fifty percent of this amount to each party.
¶ 6. Claudia filed her appeal from the April 4, 2012 judgment[3] on April 11, 2012, arguing that the chancellor erroneously classified the 140 acres as marital property-
STANDARD OF REVIEW
¶ 7. In domestic-relations matters, “[c]hancellors are afforded wide latitude in fashioning equitable remedies,” and this Court will not reverse their decisions “if the findings of fact are supported by substantial credible evidence in the record.” Henderson v. Henderson, 757 So.2d 285, 289 (¶ 19) (Miss.2000). A chancellor’s factual findings will not be reversed unless the chancellor’s decision was manifestly wrong or clearly erroneous, or the chancel *95 lor applied an improper legal standard. Wallace v. Wallace, 12 So.3d 572, 575 (¶ 12) (Miss.Ct.App.2009). When reviewing a chancellor’s interpretation and application of the law, our standard of review is de novo. Tucker v. Prisock, 791 So.2d 190, 192 (¶ 10) (Miss.2001).
DISCUSSION
¶ 8. Claudia argues that the chancellor improperly classified the 140 acres of real property as marital property. Claudia specifically asserts that the chancellor misstated Claudia’s testimony in her. opinion. Alternatively, Claudia argues that in the event this Court finds that the chancellor did not err in classifying the 140 acres as marital property, then the chancellor committed error in her award of fifty percent of the marital assets to each party, claiming that such an award fails to constitute a fair and equitable division of the marital assets.
¶ 9. In her judgment, the chancellor stated:
The testimony and evidence is substantial that the management of the property, including its enrollment in government programs, planting of trees, leasing for hunting purposes, construction of gates and roads, spraying and paying of taxes was solely at the control of [Johnny]. Further, and perhaps most importantly, [Claudia] indicated that the development and management of the property as a tree farm was for the purposes of providing income for the parties’ retirement. As such, the court finds that the normally nón-mari-tal character of the property was changed by ■ the family[-]use doctrine, Allgood [v.] Allgood, 62 So.3d 443 (Miss.[Ct.]App.2011), as well as by conversion by implied gift, Allgood, supra, such that the property lost its non-marital nature and now must be considered marital property subject to equitable distribution.
Claudia argues that the chancellor misstated her testimony, citing to her cross-examination testimony where she clarified that she and Johnny had not discussed that the tree farm would provide income for their retirement plan.
¶ 10. In Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994), the Mississippi Supreme Court defined marital property for the purpose of divorce as:
Any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor. We assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise[,] are of equal value.
We recognize that not all property acquired during the course of a marriage is “marital”; assets attributable to a party’s separate estate prior to marriage are considered nonmarital property not subject to equitable distribution. Hankins v. Hankins, 866 So.2d 508, 511 (¶ 13) (Miss.Ct.App.2004) (citing Hemsley, 639 So.2d at 914). The supreme court has explained that non-marital assets may lose their status as such if the party commingles the asset with marital property or uses the assets for the benefit of the family. Johnson v. Johnson, 650 So.2d 1281, 1286 (Miss.1994). Additionally, with regard to marital property, we acknowledge that equitable division does not mean equal division. Seymour v. Seymour, 960 So.2d 513, 519 (¶ 15) (Miss.Ct.App.2006).
¶ 11. Claudia cites to Ory v. Ory, 936 So.2d 405, 411 (¶ 15) (Miss.Ct.App.2006), where this Court found no 'error in the chancellor’s determination that a parcel of land was a nonmarital asset. This Court *96 acknowledged that the parcel belonged to the separate estate of Sharon, the appel-lee, separate estate prior to marriage, and explained that for the appellant, Alan, to have any interest in the property, it could only come through the commingling doctrine. Id. Testimony at trial reflected that Alan “cleared a portion of the land, hauled dirt onto the property, ... had a large number of seedlings planted on the property,” and made some efforts to improve the land, but this Court held that the testimony was unclear as to what extent his efforts improved the land. Id. The Ory Court also held that Alan failed to “put forth sufficient evidence to prove that his activity was so pervasive as to convert the entire seventy-five-acre parcel into a marital asset, or show how the land increased in value during his marriage to Sharon.” Id.
¶ 12. Similarly, in Hankins v. Hankins, 729 So.2d 1283, 1286-87 (¶ 15) (Miss.1999), the supreme court found that although the appellant, Charlie, planted trees on land that the appellee, Sherry, inherited from her grandfather, no testimony existed showing “the value of the trees, the extent of the planting, or that there was any agreement between Charlie and Sherry that Charlie’s act of planting the trees would thereby give him an interest in the property.” The supreme court affirmed the chancellor’s finding that “Sherry’s property retained its character as an inheritance not subject to equitable distribution.” Id. at 1287 (¶ 15).
¶ 13. Here, the record shows that Johnny testified that the property “was going to be [his and Claudia’s] retirement plan.” He testified that he went out to the property, and “had it sprayed[,] ... had it planted, [and] had the dozer work around it.” He stated that he put up a gate and then leased the property or hunting rights to pay the taxes. Johnny testified that he had been to the property about fifteen times since Claudia inherited it, but he admitted he had not been to the property in the past year and a half.
¶ 14. Claudia testified that while married to Johnny, she inherited the 140 acres at issue from her mother. Claudia’s mother deeded her the property in December 2007. She also testified that her two nephews leased the hunting rights to the land. The nephews made their lease payments to Johnny, who paid the taxes on the land. Claudia testified that she had never used the land for any family purposes — there was no four-wheel riding, no cabins were built, and there were no picnics. Claudia explained that since she is a female and the record titleholder to the property, she thus received financial assistance from the county to plant trees on the property. When asked during her testimony whether she and Johnny had discussed that the trees would “come to fruition” around their retirement age, Claudia responded “I’m afraid not,” clarifying that she and Johnny had not discussed any intention or plan to use any potential future income for retirement. As stated, based upon this testimony, Claudia argues on appeal that the chancellor misstated her testimony as a basis for the chancellor’s opinion, and therefore the chancellor’s decision lacked supporting evidence.
¶ 15. Upon review, this Court will not reverse a chancellor’s decision “if the findings of fact are supported by substantial credible evidence in the record.” Henderson, 757 So.2d at 289 (¶ 19). Here, the record reflects that the chancellor based her determination that this inherited property constituted marital property upon her finding that “the management of the property, including its enrollment in government programs, planting of trees, leasing for hunting purposes, construction of gates and roads, spraying *97 and paying of taxes was solely at the control of [Johnny].” The chancellor stated that the evidence she found most important was Claudia’s testimony “indicating] that the development and management of the property as a tree farm was for the purpose of providing income for the parties’ retirement.”
¶ 16. However, our review of the record reflects that the Renfros were married almost twenty-five years. As acknowledged, in December 2007, Claudia’s mother deeded the property to her, and Claudia and Johnny separated around three years later, in January 2011. During this time, Claudia’s family members paid to lease the hunting rights, and Johnny used this money to pay the taxes on the property. Additionally, the record reflects that Johnny, and not Claudia, provided the testimony that the tree farm was intended to provide income for the parties’ retirement. Claudia testified that she and Johnny never discussed using the income from the tree farm for retirement purposes. Johnny’s testimony asserting an intended future use as retirement income, considered in isolation, fails to provide evidence of commingling or marital use, because the future event had yet to come to fruition. We also find error in the chancellor’s determination that Johnny’s actions of enrolling the land in government programs, planting trees, leasing the land for hunting purposes, constructing gates and roads, spraying the land, and paying taxes on the property constituted sufficient evidence to convert the land into a marital asset. See Hankins, 729 So.2d at 1286-87 (¶ 15); Ory, 936 So.2d at 411 (¶ 15). This Court has held that property-tax payments are traceable and do not transmute separate property into marital property. Brock v. Brock, 906 So.2d 879, 888 (¶ 50) (Miss.Ct.App.2005) (quotation omitted) (“[T]he key to determining when there has been transmutation [from separate property to marital property] by commingling is whether the marital interests can be identified, i.e., can be traced.”). We also find no evidence submitted by Johnny to show how the land increased in value during his marriage to Claudia, or that an agreement existed between Claudia and Johnny that Johnny’s actions of managing the land would give him an interest in the property.
¶ 17. As acknowledged, nonmarital assets may lose their status as such if the party commingles the asset with marital property or uses the assets for the benefit of the family. Johnson, 650 So.2d at 1286. However, Claudia testified that she and Johnny never used the land for any family purposes. Significant to our analysis, we recognize that in the recent and similar case of Marter v. Marter, 95 So.3d 733, 737-38 (¶¶ 14-16) (Miss.Ct.App.2012), this Court held that evidence that the husband maintained the property inherited by the wife, paid the property taxes, and planted some trees on the property did not convert the property to marital property by virtue of commingling.
¶ 18. Accordingly, we find the chancellor erred in classifying the 140 acres as marital property. The record fails to show that the real property at issue was converted to marital property through the family-use doctrine, since the property was not used for a family purpose. Additionally, Johnny’s testimony only showed a potential intended purpose for the property in the future. See Deborah H. Bell, Bell on Mississippi Family Law § 6.04 (2005). The record also fails to contain evidence that Claudia commingled the property or used it as collateral for family purposes. See Bell, § 6.04[2], Also, insufficient evidence exists in the record to show that Johnny contributed anything of significance to the improvement of the property. The record shows little, if any, contribution *98 by Johnny, and shows that Claudia owned the property for only three years while she cohabited with Johnny. For the foregoing reasons we reverse the judgment of the chancery court on the matter of equitable division of the property — specifically, the classification of the 140 acres as marital property — and remand to that court for further proceedings consistent with this opinion.
¶ 19. THE JUDGMENT OF THE GRENADA COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS AND FAIR, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT. JAMES, J., NOT PARTICIPATING.

. Claudia also testified that Johnny physically abused her, and she detailed one particular violent incident that resulted in her going to the emergency room and missing eight weeks of work.

. The record reflects that the real property measured at 140.4 acres.

. The record reflects that on April 12, 2012, Johnny filed a motion to alter or amend the decree, referring to a clerical error in the judgment where the chancellor made reference to Claudia receiving a certificate of deposit in the amount of $28,538.82 issued by State Farm Bank, when the actual issuer of the CD was Renasant Bank. The chancellor acknowledged the clerical error and filed an amended judgment on June 12, 2012, correcting the error by changing State Farm Bank to Renasant Bank.