# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00534-COA

## CONSOLIDATED WITH

## NO. 2012-CA-00616-COA

| | |
|---|---|
| **CLAUDIA JOAN HILL RENFRO** | **APPELLANT** |

v.

| | |
|---|---|
| **JOHN MALCOLM RENFRO** | **APPELLEE** |

| | |
|---|---|
| DATE OF JUDGMENT: | 02/27/2015 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD JR. |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LUTHER PUTNAM CRULL JR. |
| ATTORNEYS FOR APPELLEE: | A.E. (RUSTY) HARLOW JR. |
| | KATHI CRESTMAN WILSON |
| | SABRINA D. HOWELL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | GRANTED DIVORCE; DIVIDED PROPERTY; AWARDED LUMP SUM ALIMONY |
| DISPOSITION: | AFFIRMED: 01/31/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, P.J., BARNES AND FAIR, JJ.

### FAIR, J., FOR THE COURT:

¶1.     In April 2012, the Grenada County Chancery Court awarded Claudia Renfro a divorce from her husband, John Renfro, on the ground of adultery. The chancery court divided the marital estate equally. In *Renfro v. Renfro*, 125 So. 3d 92 (Miss. Ct. App. 2013), this Court found that the chancery court erroneously classified as marital property land Claudia had

inherited about three years prior to the separation.[1] On remand, the chancery court awarded John a larger share of the marital estate, equal to approximately half the value of Claudia's land, as lump sum alimony and in the form of Claudia's half interest in the marital home. Claudia has again appealed, and she contends that the award was erroneous because it appears calculated to reach the same ultimate result as the original property division.

¶2.     We conclude that, while the decision on remand does reach the same result, it is supported by substantial evidence and the correct legal standards were applied. Our standard of review precludes interference with the judgment, and so we affirm.

## STANDARD OF REVIEW

¶3.     "When [an appellate court] reviews a chancellor's decision in a case involving divorce and all related issues, [the court's] scope of review is limited by the substantial evidence/manifest error rule." *Yelverton v. Yelverton*, 961 So. 2d 19, 24 (¶6) (Miss. 2007). A chancellor's factual findings will not be disturbed unless manifestly wrong or clearly erroneous, or an erroneous legal standard was applied. *Carambat v. Carambat*, 72 So. 3d 505, 510-11 (¶24) (Miss. 2011). As long as substantial evidence supports the chancellor's findings, an appellate court is without authority to disturb them, even if it would have found otherwise as an original matter. *Joel v. Joel*, 43 So. 3d 424, 429 (¶14) (Miss. 2010). Additionally, if the chancellor has made no specific findings, we generally proceed on the assumption that he resolved all such fact issues in favor of the appellee. *Ferrara v. Walters*, 919 So. 2d 876, 881 (¶8) (Miss. 2005) (citing *Newsom v. Newsom*, 557 So. 2d 511, 514

---

[1] The Mississippi Supreme Court ordered that the records of the instant appeal and the prior appeal be consolidated for the purposes of the record only.

2

(Miss. 1990)). Questions of law, on the other hand, are reviewed de novo. *Irving v. Irving*, 67 So. 3d 776, 778 (¶11) (Miss. 2011).

## DISCUSSION

¶4.    At issue in *Renfro I* was 140 acres of land inherited by Claudia approximately three years before the separation. The Renfros had expended significant marital funds and energies planting and managing the land as an investment, which led the chancellor to conclude it had become marital property. We reversed, finding that the land had not been commingled to the extent that it lost its character as separate property. *Renfro I*, 125 So. 3d at 97-98 (¶¶17-18).

¶5.    On remand, the chancellor accepted Claudia's land as her separate property, but he found that her large separate estate, coupled with the smaller marital pot, had changed the calculus. Although the chancellor nominally divided the remaining marital property equally, after reviewing the *Ferguson* and *Armstrong* factors,[2] he then awarded Claudia's half of the marital home to John as lump sum alimony.

¶6.    Claudia presents numerous challenges to this award. She points out on appeal that the home was approximately equal in value to her 140 acres, and that the result of the chancellor's decision on remand is essentially to recreate the original property division, which was reversed on appeal. But there is nothing inherently suspicious about the chancery court reaching a similar result on remand. *See, e.g., Powell v. Evans*, 113 So. 3d 1270, 1275 (¶23) (Miss. Ct. App. 2013). Our reason for reversing the original property division was the

---

[2] *See Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994); *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

erroneous classification of Claudia's 140 acres, and the chancellor classified the property as separate on remand. *Renfro I*, 125 So. 3d at 97-98 (¶18). The chancellor's decision, which we discuss below, was based upon the correct classification of the property, and therefore the division must be examined on its own merits.

¶7. Claudia also contends that the chancellor disregarded this Court's mandate in *Renfro I* by reconsidering John's request for alimony. In *Renfro I*, we "reverse[d] the judgment of the chancery court on the matter of equitable division of the property – specifically, the classification of [Claudia's] 140 acres as martial property" – and we remanded "for further proceedings consistent with this opinion." *Id.* at 98 (¶18). While our opinion in *Renfro I* did not explicitly say so, the issues of property division and alimony are "intertwined," and so a "change in the division of the marital estate may necessitate a change in the award of [alimony]" on remand. *McKissack v. McKissack*, 45 So. 3d 716, 723 (¶41) (Miss. Ct. App. 2010). "All property division, lump sum or periodic alimony payment, and mutual obligations for child support should be considered together. Alimony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, where one expands, the other must recede." *Ferguson*, 639 So. 2d at 929 (citation and internal quotation marks omitted).

¶8. The chancellor began his analysis by recognizing that Claudia's 140 acres was her separate property, as we had found in *Renfro I*. The chancellor listed and valued the remaining marital property, as well as the parties' separate estates, and then proceeded to an analysis of the *Ferguson* factors. Those factors are:

4

1.  Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

> a.  Direct or indirect economic contribution to the acquisition of the property;
>
> b.  Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
>
> c.  Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets[;]

2.  The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise[;]

3.  The market value and the emotional value of the assets subject to distribution[;]

4.  The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5.  Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6.  The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7.  The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8.  Any other factor which in equity should be considered.

*Ferguson*, 639 So. 2d at 928.  The chancellor found, as in *Renfro I*, that both parties had contributed equally to the acquisition of the marital estate.  But the chancellor noted that the

estate was now much smaller, and an equal share of it would not give John financial security. John's future income would also be reduced, as he would not receive expected income from the land. Claudia, on the other hand, had a greater earning capacity and therefore less need for assets.

¶9. At this point, the chancellor divided the marital property equally between the parties. He noted that both parties had been employed throughout the marriage, and that there were no children born to the marriage. He further described a change in their financial status, observing:

> [Claudia], with the much greater earning capacity than the husband, does not have the pressing need for financial security now as she did previously. Further, as the 140 acres provides a source for additional income in the future for [Claudia] that [John] does not have, given his age and current earning capacity, this again calls for reconsideration.

¶10. The chancellor then found a deficiency had resulted from the equal property division. An analysis of the *Armstrong* factors led to the conclusion that John was due approximately $100,000 in lump sum alimony, which the chancellor held would be paid in the form of Claudia's share of the marital home, worth approximately that amount.

¶11. Since the purpose of the award was to remedy a deficiency in John's ability to meet his needs after the divorce, the chancellor properly considered the *Armstrong* factors in determining whether an award of alimony was appropriate.[3] *See Lewis v. Pagel*, 172 So. 3d

---

[3] The chancellor could have awarded the home to John directly through equitable division, as it was a marital asset; the fourth, sixth, and seventh *Ferguson* factors contemplate the use of equitable division to eliminate the need for alimony. In such cases, it is still preferable for the chancellor to undertake an *Armstrong* analysis to show that alimony would otherwise be required.

162, 176 (¶29) (Miss. 2015). The *Armstrong* factors are: (1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home; (7) the age of the parties; (8) the standard of living of the parties; (9) the tax consequences of the support decree; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; and (12) any other factor deemed to be fair and equitable. *Armstrong*, 618 So. 2d at 1280.

¶12. Claudia makes several challenges to the alimony award. She first disputes the chancellor's finding of a deficit after the property division; according to Claudia, John had no financial needs because he was cohabiting with his paramour following the divorce. The question of a deficit is a threshold question before alimony may be considered, but the deficit in question is "with respect to having sufficient resources and assets to meet . . . needs and living expenses." *Layton v. Layton*, 181 So. 3d 275, 282 (¶17) (Miss. Ct. App. 2015) (quoting *Jackson v. Jackson*, 114 So. 3d 768, 777 (¶22) (Miss. Ct. App. 2013)). Thus, the question of a deficit is essentially subsumed by the *Armstrong* factors – and since Claudia challenges the chancellor's findings on the *Armstrong* factors as well, we proceed to that issue.

¶13. The chancellor's *Armstrong* analysis addressed the concerns he had articulated before dividing the property: the parties had been married for twenty-four years before separating, and at the time of the divorce, John was sixty years of age. In the years preceding the separation, John had been earning little money from his contracting business, and his health

7

had recently declined. His health insurance after the divorce would cost $647 per month, more than his average monthly income in the years preceding the divorce. The chancellor found that John's total estate after the property division, valued at about $210,000 and consisting largely of personal effects and equity in the marital home, was insufficient to provide John with economic security. By comparison, Claudia was several years younger, had a much larger separate estate with the promise of future income, had much lower medical insurance premiums, and had made much more money in recent years.[4] The chancellor acknowledged John's fault in causing the divorce and found the remaining factors were not applicable.

¶14. Claudia attacks nearly all of the factors the chancellor found to favor alimony. She points out that John's testimony about his recent illness was vague ("a blood disease"). She also contends that the chancellor's findings about John's income were faulty because they were based on tax returns (which, admittedly, Claudia had signed) and did not reflect his true income from self-employment. But Claudia was herself rather vague and inconsistent in her suggestions that John failed to report his actual income. Even when pressed by the chancellor to explain herself, she stated only that John seemed to have more money than she did and that he kept an unknown amount of cash in a safety deposit box.

¶15. Claudia also points out that John had represented his income on his Uniform Chancery Court Rule 8.05 statement as $1,500 per month, which is more than the chancellor seemed to accept by citing Claudia's testimony about their tax returns; but there was no testimony

---

[4] "[Claudia] indicated that her income was between three and twenty times that of the Defendant in any given year."

at trial about this number and nothing to make it manifest error for the chancellor to find that five years of tax returns were a truer reflection of John's ability to earn money from the contracting business. There was also testimony that John was generous with his children and stepchildren, but the amounts he gave them were either unstated or not necessarily indicative of a high income. Also, John did admit that he did some work at a business owned by his paramour, but there was no clear evidence as to how much time he spent doing this or the market value of his labor. Likewise, there was no evidence introduced at trial regarding John's expected Social Security income.

¶16. Next, we address Claudia's challenge to the award based on John's needs and expenses. At the time of trial, John was living in his paramour's home, and she shared her vehicle with him. John did not contribute to paying for either. According to Claudia, the chancellor erred in failing to take this into account. But, in fact, John never claimed rent or a house note as expenses in his testimony or his Rule 8.05 disclosure. As to the vehicle, John testified that although he had driven it before, it belonged to his paramour; and John still maintained and used his own vehicle. Moreover, the chancellor's findings as to John's need and the "deficit" he suffered after the property division do not appear to have been predicated entirely on day-to-day expenses. Instead, the chancellor emphasized John's need for "security," encompassing future as well as present expenses.

¶17. In summary, we certainly recognize that the chancellor had before him evidence from which he could have imputed income to John, and that might have changed the result of the alimony award. But that was a factual determination, and "the chancellor, as the trier of fact,

9

is the judge of the credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation." *Bowen v. Bowen*, 982 So. 2d 385, 395 (¶42) (Miss. 2008) (citation and internal quotation marks omitted). Moreover, "[w]hether or not to award alimony and the amount of alimony is largely within the discretion of the chancellor." *Lewis v. Pagel*, 172 So. 3d 162, 176 (¶30) (Miss. 2015) (citation omitted). From our review of the record, it is clear that the correct legal standard was applied, and the chancellor's findings are supported by substantial evidence in the record. As a result, we are obligated to affirm the judgment.

¶18. **THE JUDGMENT OF THE CHANCERY COURT OF GRENADA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON AND GREENLEE, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., NOT PARTICIPATING.**